## CITY OF PORT ARTHUR v. YOUNG et al.
### No. 2058.

Court of Civil Appeals of Texas. Beaumont.
March 26, 1931.

Rehearing Denied April 8, 1931.

ration," subject to the same conditions assumed by him in his grant and upon the following additional conditions:

"To be used by said city for and as a public park and pleasure ground, and for the purposes of amusement and recreation the same to be enjoyed for such purposes by the public generally, the said city having, the right to adopt reasonable rules and regulations in regard to said property, etc.—and obligates itself by acceptance of this gift and donation, to forever preserve and use the property hereby conveyed for the purposes and objects as set forth in this gift.

"Obligates itself to keep property in reasonable state of repair, used and enjoyed by the public generally as a place for amusement, pleasure, and recreation.

"By acceptance hereof, the City recognizes existence of certain rights acquired by other person, etc.—and will not disturb same, etc. —sets forth Pier Railway Company, Hada, Roller Coaster Company, and Port Arthur Amusement Company, similar to deed from Port Arthur Pleasure Pier Company to C. E. Dunstan, recorded in Vol. 157, page 102, Deed Records, Jefferson County, Texas."

On the 20th day of September, 1916, the city of Port Arthur leased the pleasure pier property to C. E. Dunstan to be held, used, and enjoyed by him as pleasure pier property and to be operated by him as a business proposition with charges to the public for the use of the accommodations furnished by him to them. The lease did not purport to surrender to Mr. Dunstan absolute control of the property, but only to give him the right to erect and maintain thereon pleasure devices such as dance halls, skating rinks, bathhouses, etc. In connection with the lease Mr. Dunstan assumed certain obligations towards maintaining the physical condition of the property. But no charges whatever were to be required of the public in going upon and across the property, nor for the use of the property as such, but only for the use of the conveniences furnished by him. This lease was to run to April 1, 1923. On the 1st day of June, 1924, the city of Port Arthur executed to Dunstan another lease to the same property upon practically the same conditions, for a period of two years. On April 6, 1926, the city of Port Arthur made a third lease of this same property to W. A. Young for a term of ten years, with the right in Young to an extension of ten years and the additional right to assign the lease, or any part thereof. The conditions of this lease were practically the same as in all previous leases. By the terms of the lease the city of Port Arthur bound and obligated itself to maintain the pleasure pier bridge in a safe operating condition at all times, with the pro-

Shivers & Baker and V. J. Wistner, all of Port Arthur, for appellant.

O. S. Parker and Jas. A. Harrison, both of Beaumont, for appellees.

WALKER, J.

On the 10th day of April, 1916, the Port Arthur Pleasure Pier Company, by its deed in writing, conveyed to C. E. Dunstan the pleasure pier property in issue in this case, situated near the city of Port Arthur. Dunstan took the property subject to the conditions under which it was being operated by permission of the United States government and to the rights of all other interested parties. Previous to the date of this deed the pleasure pier property had been operated for a long time as a pleasure pier, strictly on a business-basis, with charges made to the public for the entertainment furnished. On the same day Dunstan conveyed the same property to the city of Port Arthur, appellant herein, "in its capacity as a municipal corpo-

vision that no rental should be paid during the time the bridge was out of order or on account of any accident or injury to the bridge, and that during the time the bridge was out of order and being repaired no rental should be paid, but that the terms of the lease would be extended for the time the bridge was out of working order. To understand this clause of the lease, it should be said that the pleasure pier property was located upon an island bounded on one side by Sabine Lake, and on the other sides by the ship channel. This island lies immediately adjacent to the city of Port Arthur, and the bridge referred to was the only way the public could gain access to the property.

This lease to W. A. Young was regularly made by the city of Port Arthur under authority of a resolution duly passed by the city council. Afterwards W. A. Young duly assigned to C. R. Kirkmeyer an interest in the lease. After the lease was executed the lessees regularly paid the stipulated rental. They improved and repaired the dance hall, built a skating rink, bought an organ, built a ball park, bathhouses, purchased a merry-go-round and ferris wheel, all of which were located upon the pleasure pier property, and furnished for the use, convenience, and amusement of the public in using the pleasure pier property. Also, for the convenience of the public, the lessees improved the roads leading to and across the property. These improvements were within the reasonable contemplation of the parties in the making of the lease and cost a large sum of money. W. A. Young died after conveying Kirkmeyer an interest in the lease. This suit was instituted by his widow, Mrs. W. A. Young, and his grantee, C. R. Kirkmeyer, as the legal and equitable owners and holders of the lease, against the city of Port Arthur for damages for breach of the conditions of the lease by the city of Port Arthur. The conditions of the lease were fully pleaded. The breach was alleged as follows:

"On or about the month of October, 1927, said pleasure pier bridge was ordered closed by the City of Port Arthur and plaintiffs were not permitted to use same but were ordered by said City not to use said bridge for any purpose in connection with their pleasure pier and sometime thereafter the City of Port Arthur and those acting under its authority dismantled said bridge, tore it out and removed same and there is now no bridge at all and defendant, in violation of said lease, failed, declined and refused to keep said bridge in a safe condition for operation as they were required to do in said lease contract and in violation thereof tore down, dismantled and removed said bridge, thereby destroying the value of plaintiffs' lease and the value of their property placed on said pleasure pier and caused plaintiffs to suffer as a direct result thereof the damages hereinafter set out.

"The defendant wilfully and tortiously closed said bridge and failed to repair same and to maintain same in a safe operating condition and did not intend to maintain said bridge in a safe operating condition and for that reason tore down and dismantled said bridge and defendant never intended when said bridge was torn down and dismantled or when it failed to keep same in safe condition and when it notified plaintiffs that said bridge could not be used by them to keep said bridge in operating condition and to maintain same as required in said contract but defendant wilfully breached said lease contract in those particulars and deprived said plaintiffs in addition to the value of plaintiffs' property lost by reason thereof, to the profits plaintiffs would have made had defendant complied with said lease contract, which damages plaintiffs say amount to at least $200,000.00 and plaintiffs have been damaged in the full sum of $200,000.00 by reason thereof."

The damages claimed consisted of the loss of benefits and profits contemplated by the lease and of the improvements built and erected by them upon the pleasure pier property, resulting from the destruction of the bridge. Profits were claimed for the unexpired portion of the ten-year period and for the ten-year extension period upon allegations that plaintiffs would have exercised the option to extend the lease for ten years.

Plaintiffs alleged the due execution of the lease; and pleaded alternatively that, because of the conduct of the city in receiving from them from time to time the consideration for the lease and permitting them to make the costly improvements on the faith of the lease, it was estopped to deny its validity.

The defendant answered by general and special demurrers and by the following special pleas, which present as issues of fact the same legal propositions urged under the general and special demurrers: (a) The property was deeded to the city as trustee, and as trustee it had no power to make the lease. (b) The lease contract was not executed under the charter provision requiring that it be authorized by an election. (c) The lease was executed under authority of a resolution, and the charter required that it be authorized by an ordinance. (d) It was further answered that the contract provided a special penalty for defects in the bridge by section 3 thereof, which was as follows: "The lessor shall maintain the pleasure pier bridge in a safe operating condition at all times, provided that no rental shall be paid to the lessor for any time during which said bridge is out of working order on account of any accident or on account of any other defect therein or in-

jury thereto and provided further that any time lost under this said lease under the terms of this next preceding proviso shall be added to the said ten year period or periods of time specified in this said agreement, paragraph numbered 'one,' so as to extend the life of this said lease in proportion to the time lost by reason of the said bridge being out of order, provided that the lessee shall notify the lessor in writing that the said bridge is at any time out of working order and provided that the lessor's engineer shall immediately examine this said bridge and, if found by him to be actually out of working order, said bridge shall be deemed to have been out of working order from the time said out of order notice is given until said engineer shall have certified that said bridge is again in a safe working condition." (e) It was further answered that the twenty years contemplated by the lease was an unreasonable exercise of any authority the city had to lease the property. Upon these allegations appellee insisted the contract was void. (g) It further answered that the plaintiffs themselves had breached the contract, and, if they had suffered any damages, the claim was waived because claim had not been made therefor within thirty days after the damages accrued and was therefore waived, but no propositions are advanced under this plea. The issues raised by the pleading and evidence were submitted to the jury as follows and answered as indicated:

"Special Issue No. 1

"Do you find that the plaintiffs in this case would have exercised their option under said contract, and would have operated said pleasure pier for the second period of ten years, if the City of Port Arthur had maintained the pleasure pier bridge in safe operating condition at all times during said first period of ten years?" Answer: "Yes."

"Special Issue No. 2

"Do you find, on October 5th, 1927, when the City of Port Arthur stopped traffic over the pleasure pier bridge, that the said bridge was in a safe or an unsafe operating condition?" Answer: "Unsafe."

"Special Issue No. 3

"Do you find that after closing the pleasure pier bridge to traffic on October 5th, 1927, the City of Port Arthur used due diligence in taking reasonably necessary steps to repair said bridge?" Answer: "No."

"Special Issue No. 4

"Do you find that it was in contemplation of both parties to the contract in question in this suit that said pleasure pier bridge might be unsafe or unsuitable for use after April 1st, 1926, for such a length of time as has elapsed since the closing of said bridge by the City of Port Arthur on October 5th, 1927?" Answer: "No."

"Special Issue No. 5

"What amount of money, if paid now, would fairly and reasonably compensate the plaintiffs for their loss of profits, if any, resulting from the closing of said pleasure pier bridge for the period of time from October 5th, 1927, until the expiration of the first period of ten years from April 1st, 1926?" Answer: "$32,980.00."

"Special Issue No. 6

"If you have answered Special Issue No. 1 'yes,' then, what amount of money if paid now would reasonably compensate the plaintiffs for their loss of profits, if any, resulting from the closing of said pleasure pier bridge by the City of Port Arthur on October 5th, 1927, for the second period of ten years covered by said contract?" Answer: $1,000.00."

"Special Issue No. 7

"What was the reasonable value on October 5, 1927, of the permanent improvements placed on the Port Arthur Pleasure Pier property by W. A. Young, together with the repairs and betterments, made by him, on the permanent improvements that were on said property at the time of his leasing, to-wit: April 1, 1926?" Answer: "$15,000.00."

Upon the verdict judgment was entered in favor of plaintiffs for the sum of $38,980, with 6 per cent. interest from date of judgment. The city of Port Arthur has duly perfected its appeal, and the plaintiffs also cross-assign error against the judgment.

There is no assignment of error or proposition attacking the verdict of the jury as being without support in the evidence, that is to say, that no assignment is before us challenging the findings of the jury as being without support, but only that under the pleadings and the undisputed evidence judgment should have been instructed in favor of appellant.

Opinion.

Appellant presents its appeal under twenty-eight propositions. Twenty of these propositions present the same legal questions involved in appellant's special demurrers and pleas, as above stated. Discussing these contentions in the order given in the above statement, it is our conclusion that all of them are without merit.

The deed of gift expressly stated that the property was deeded to the city, "in its capacity as a municipal corporation." Also,

it clearly appears from the face of the deed that the city was to hold the property in trust for the general public to be used "as a place for amusement, pleasure and recreation." The deed gave the city the right "to adopt reasonable rules and regulations in regard to said property." As the city held this property, by the terms of the grant, not in the exercise of its governmental powers, but in its capacity as a municipal corporation, it was not prohibited by the general laws nor by its charter nor by the statutes and Constitution of the state from leasing the property. If there was any denial of that right, this want of power must be found in the deed of gift. This general proposition has full support in 43 C. J. 183 and in City of Belton v. Ellis (Tex. Civ. App.) 254 S. W. 1023, and Henrietta Country Club v. Jacobs (Tex. Civ. App.) 269 S. W. 137. Looking then to the terms of the grant, it appears that the property was to be open to the accommodation of the general public. The lease fully protected the public in this respect. No fee was to be charged to gain access to the property, nor to leave it. At all reasonable hours, under the terms of the lease, any and all members of the public had the right to enter and leave the property at their pleasure. All parts of the property were reserved for the use of the public except those parts improved, used, and held by the lessee—its pleasure devices such as dance hall, bathhouse, ferris wheels, etc. These devices and the improvements connected with them were essential to the use and enjoyment of the property under the terms of the deed of gift. Without them the property was only a barren waste. So, in granting to the lessees the right to operate and maintain these devices, it is clear that the city was doing nothing not commanded by its grant; but, on the contrary was effectuating the purposes of the grant. The question then is, Was the city required by the grant to improve the property with its own funds and operate it through its agents, or did it have the power to delegate this duty to a suitable lessee, as was done by the lease contract in question? The intent of the parties in executing and delivering the deed of gift must answer this question. Only a short while after the deed was delivered the parties thereto executed between themselves a lease similar in its rights and obligations to the lease involved in this suit. They afterwards renewed this lease. These two contracts remained in force and the property was operated under them for ten years. Mr. Dunstan was again a bidder for this contract. It thus appears that the parties themselves have construed the deed of gift and, we think, answered the question beyond all doubt that Dunstan, in deeding the property to the city, and the city in accepting the deed, intended that the property should or could be operated by and through suitable lessees. Further, we think

the very language of the grant to the city gave it that right, in that it was given the right to adopt reasonable rules and regulations in regard to the property. This was the construction given the grant by the legal department of the city and by its city council for a period of about fourteen years. A third reason sustains our construction of the deed. It is a matter of general knowledge that cities and towns grant the right to private individuals to operate pleasure concessions in their public parks for the convenience and amusement of the general public. So far as we know, the power to make such contracts has never been denied cities in the management and control of their parks for the benefit of the general public. There being nothing in the deed of gift denying this power to the city, we think it should be said, in executing and delivering the deed of gift, that the parties had in mind that the city could discharge the duties assumed by it to the public by delegating these duties to a suitable lessee.

■ There is no merit in the contention that the lease was void because not authorized by an election held for that purpose. It is true that by section 7, chapter 6, of article 3 of the charter it is provided that parks, bridges, and other public property of the city are "declared to be inalienable except by a two-thirds vote of the qualified taxpaying voters at an election to be called and held therefor." But this clause of the charter has no relation to this lease because it was in no sense an alienation of the pleasure pier property, but its manifest purpose was to assist the city in discharging its contractual burdens.

Section 7 of chapter 6 of article 3 also provides: "No franchise or lease or right to use the streets, avenues, parks, bridges and other public places either on, through, across or under or over the same, shall be granted by the City except by ordinance in accordance with the provisions of this charter." Appellees specially plead that the lease was authorized by a resolution and not by an ordinance. Under the clause of the charter just quoted, appellant insists that this allegation made the lease void. We shall not discuss this section of the charter, as it relates to the execution of the lease. As the city had the power to make the lease, its failure to execute it in the manner provided by the charter constituted, at the most, only an irregularity rendering the lease voidable and not void. As the contract was merely voidable, conceding all the force that can be given appellant's argument, it was estopped, under the facts pleaded and proved by appellees, to deny its validity.

■ By section 3 of the contract copied above appellant was not contracting against the total destruction of the bridge nor against

such injuries as would keep it out of commission for an unreasonable length of time. This construction must follow because the purpose of the contract was to have the property operated continuously as a pleasure park, and without the bridge the public could not gain access thereto, and the costly improvements made by appellees would have been rendered worthless. As the contract did not provide specifically for the time the bridge could be out of commission, within the terms of section 3, it must be held that the parties had in mind a reasonable time. This issue was sent to the jury by question 4 and answered against appellant.

■ There is no merit in appellant's contention that twenty years, as a matter of law, constituted such an unreasonable period of time as to render the contract void. Neither appellant's charter nor the general law imposes any specific restriction as to time.

■ At this point we will discuss appellees' cross-assignments that the court erred in refusing to award them judgment for $10,000 of the $15,000 found by the jury in answer to question No. 7. Appellees were not entitled to recover this sum. The value of the property on the 5th day of October, 1927, was purely evidentiary. Appellees were not suing to recover their damages as of that date, but pleaded the contract for the entire period and prayed for judgment for profits for the entire life of the contract. This issue was found by the jury in appellees' favor in a very substantial sum. To make this profit it would have been necessary for appellees to use their property for the entire life of the contract. Under the terms of the contract, at the expiration of the lease, the permanent improvements were to revert to the city, with the right in appellees to remove their other improvements. Having recovered judgment for profits for the entire life of the contract, appellees can hold these profits only upon the conditions of the contract. Under these conditions the cost of the betterments and permanent improvements did not constitute an element of damages.

We have discussed appellees' cross-assignments at this point, because appellant has assigned error against the ruling of the court in permitting oral testimony as to the cost of the improvements submitted to the jury under question 7. Without passing upon the merits of these objections, it is sufficient to say that the testimony was immaterial upon the determinative issues submitted to the jury and could not have improperly influenced the jury against appellant's legal defenses.

■ The court did not err in excluding a copy of a letter written from the office of Major Schley detailing the conditions of the bridge as found by his engineers.

■ No error was committed in refusing the submission of the following question: "Was the dismantling of said bridge by the City of Port Arthur a breach of its contract?" This question submitted an issue of law arising upon the construction of the contract. The remaining propositions are clearly without merit.

Since appellant has not assigned error against the verdict of the jury, but only that, as a matter of law, judgment should have been rendered in its favor, it follows that the judgment of the lower court in appellees' favor, as rendered, should be affirmed, and it is accordingly so ordered.

### On Rehearing.

The judgment of the lower court was affirmed in the sum of $38,980, the amount shown by the transcript. On rehearing appellant calls our attention to the fact that the correct amount of the judgment was $33,980, which is conceded by appellee and supported by a certificate from the district clerk to that effect. It is therefore ordered that the motion for rehearing be granted to the extent of correcting this manifest error in the transcript, and that the judgment of the lower court be affirmed in the sum of $33,980, with interest at the rate of 6 per cent. per annum from the date thereof. In all other respects the motion for rehearing is overruled.