### EASTERWOOD v. LIBERTY MUT. INS. CO.
### No. 1730.

Court of Civil Appeals of Texas. Waco.

April 2, 1936.

Rehearing Denied April 30, 1936.

Geo. Clark, of Waco, for appellant.

Leachman & Gardere, of Dallas, for appellee.

ALEXANDER, Justice.

This is a workmen's compensation case. G. W. Easterwood was the alleged employee, Texas Utilities Company, the employer, and Liberty Mutual Insurance Company, the insurance carrier. The material issue in the case was whether or not, at the time of his injury, Easterwood was a servant or an independent contractor. The jury made findings on all issues favorable to the employee, but the court, on motion properly presented, entered judgment non obstante veredicto in favor of the insurance company. The employee appealed.

As before stated, the material issue was whether or not, at the time of his injury, Easterwood was a servant or an independent contractor. The jury found that he was a servant and not an independent contractor. Construing the testimony in the light most favorable to the appellant, the facts are these: In the fall of 1933 Easterwood had driven an ice wagon for a few days for the Texas Utilities Company in the town of Rosebud as a substitute for his son, a regular employee of the company, who was ill. That employment seems to have terminated when Easterwood's son regained his health. At the end of the ice season that fall, Easterwood was employed to take the mules previously driven by him to the ice wagon to a pasture some eight or ten miles distance from Rosebud. He used his own wagon and team and ropes and his own helper in taking the mules to the pasture, and was paid the sum of $1 for his services. In March, 1934, an employee of the ice company told Easterwood that the company wanted him to go to the pasture and get the mules and bring them to town; that they were not ready for them to be brought in at that time, but that he would be notified later when the mules were to be brought in. Easterwood stated to the company's representative at that time that he would have to have $2.50 or $3 for bringing the mules back to town. He was told in reply that he would hear from the company later. Thereafter, on Monday prior to Easterwood's injury on the following Tuesday, an employee of the ice company approached Easterwood on the street and told him that the company wanted him to go to the pasture the next morning and get the mules and bring them to town as quick as he could. He was not given any instructions as to how the work was to be done. Nothing was said at that time about the price to be paid for the services. The next morning Easterwood hired an extra man at his own expense to go with him, took his own wagon and team and ropes, and went to the pasture to get the mules. He and his assistant caught the mules, and, while he was tying them to the back of the wagon one of them reared up, and as a result Easterwood's fingers were caught in the rope and cut off. He was later paid $2.50 for his services. He was skilled in the handling of mules, and was familiar with the habits of these particular mules.

From the above facts, it is apparent that Easterwood undertook to do a specific piece of work for the utilities company.

He was free to use his own means and methods in accomplishing the result. His only instructions were to bring the mules to town the next morning as early as possible. He actually used his own wagon, team, and ropes and employed his own helper, and impliedly was to be paid a lump sum for his services when the desired results were accomplished. The employer did not undertake to control nor reserve the right to control the physical conduct of Easterwood in accomplishing the results undertaken by him. Under these circumstances, we think the trial court was correct·in holding that the evidence established as a matter of law that Easterwood was an independent contractor and not a servant of the employer, and that the carrier of the workmen's compensation insurance was not liable. Restatement of the Law of Agency, c. 1, § 2; Carter Publications, Inc., v. Davis (Tex.Civ.App.) 68 S.W.(2d) 640, 641; Shannon v. Western Indemnity Co. (Tex.Com.App.) 257 S.W. 522; Southern Surety Co. v. Scheel (Tex.Com.App.) 78 S.W.(2d) 173; Southern Surety Co. v. Shoemake (Tex.Com.App.) 24 S.W.(2d) 7; Security Union Ins. Co. v. McLeod (Tex. Com.App.) 36 S.W.(2d) 449; Dave Lehr, Inc., v. Brown (Tex.Com.App.) 91 S.W. (2d) 693.

There was no error on the part of the trial court in refusing to allow appellant to testify that at the time the contract was entered into he intended to submit himself to the supervision and control of the utilities company with reference to the manner in which the work was to be performed. The evidence is clear with reference to what language was used by the parties in making the agreement. The intention of the parties is to be gathered from the language so used and not from the secret intentions of one of the parties. 10 Tex.Jur. 274; 13 C.J. 523, § 483; American Railway Express Co. v. Patterson Produce Co. (Tex.Com.App.) 12 S.W.(2d) 158, par. 5; First National Bank v. Rush (Tex.Civ.App.) 227 S.W. 378, par. 11. For the same reason, appellant was properly denied the right to prove by the agent of the utilities company who made the agreement that he did not intend to make appellant an independent contractor.

The judgment of the trial court is affirmed.