ADVANCE ALUMINUM CASTINGS CORP.

v.

SCHULKINS.

No. 4947.

Court of Civil Appeals of Texas.

Beaumont.

April 8, 1954.

Rehearing Denied April 28, 1954.

Wardlow Lane, Center, for appellant.

Davis Bailey, Carthage, for appellee.

WALKER, Justice.

The action is for damages. Appellee Schulkins is the plaintiff. There were four defendants; appellant Advance Aluminum Castings Corporation was charged with breach of a contract of employment with plaintiff, and E. T. Pierce, J. E. Pierce, and R. L. Eakin, Jr. were charged with procuring this breach of contract.

The defendant Corporation is engaged in the business of selling cooking ware made of aluminum; and plaintiff became one of said defendants' salesmen in October, 1948 and served in that capacity until he was appointed Assistant Factory Representative. Such a salesman is styled "a dealer," and the agreement between defendant Corporation and plaintiff concerning this relation was eventually reduced to writing. This contract was dated February 10, 1949. Four days later, by a letter dated February 14, 1949, the defendant Corporation appointed plaintiff to the place of Assistant Factory Representative; and plaintiff accepted and served in this place until defendant Corporation appointed him a Factory Representative by a letter dated December 16, 1949. He accepted and served in this place until he was dis-charged. He testified that he was discharged on October 23, 1950, and this was the date of a telegram to him from Wilson, defendant Corporation's president, which, in substance, instructed him to turn over his office to the defendant Eakin. A telegram to plaintiff from the defendant E. T. Pierce, dated five days earlier, gives as the reason for plaintiff's discharge the failure of plaintiff's district to produce adequate sales for defendant Corporation and this was the reason given plaintiff by E. T. Pierce in a later conversation. Plaintiff said he knew of nothing which warranted his discharge and it is not clear to us from the evidence as to what his theory is concerning the reason for his discharge. The plaintiff eventually entered the employment of one of defendants' competitors, and was so employed when this cause was tried.

The three persons who were the defendant Corporation's co-defendants either were or had been agents of the defendant Corporation. E. T. Pierce was the plaintiff's immediate superior officer from the time the plaintiff became a dealer until he was discharged. J. E. Pierce at one time during this same period was a factory representative of the defendant Corporation but at the time of trial was a dealer. R. L. Eakin, Jr. had served under plaintiff and had replaced plaintiff; he was not in defendants' employ when this cause was tried.

The cause was tried to a jury and such of the findings as need be discussed are mentioned below. The trial court rendered judgment for plaintiff against the defendant Corporation for the damages assessed by the jury, which amounted to $8,678.00. Plaintiff was denied any relief against the defendant E. T. Pierce, and the defendants J. E. Pierce and R. L. Eakin, Jr. were dismissed at plaintiff's request. From this judgment the defendant Corporation has appealed. The plaintiff took no appeal.

## Opinion

(1) Defendant Corporation argues that it was entitled to judgment on the ground that the contract between the plaintiff and

said defendant was proved as a matter of law to be one for personal services, at the will of the parties, and that said defendant Corporation had a legal right to terminate this contract with or without cause.

The plaintiff says that his contract of employment was not one for personal services but was "an exclusive sales contract in which the entire remuneration (he) was to receive was covered by and was paid out of the sales (he) was able to produce through his dealers he had trained to sell in the territory assigned to him." Plaintiff says further that this "sales contract was to continue for such length of time as (he) remained in business and chose to work as a sales manager in the assigned territory, which was indefinite only to the extent that neither party to the contract was able to say at its inception on what date it would terminate, yet it was regarded as permanent within the meaning of that class of contracts to which it belongs—and by the intention of the parties themselves." The plaintiff says further that his performance of his duties, his removal of his home from one town to another, and his purchase of a home were consideration for the promise of the defendant Corporation. Plaintiff also argues that defendant Corporation may be bound although he was not.

The evidence pertaining to these arguments of the parties is the following:

The plaintiff actually made three successive contracts with the defendant Corporation.

The first of these contracts was that governing his relationship as dealer for the defendant Corporation. The function of a dealer for said defendant is to sell the defendant Corporation's goods; and the written agreement of February 10, 1949 between plaintiff and said defendant Corporation, purported to make the plaintiff, while dealer, an independent contractor who conducted his own business and was not an employee of said defendant. This agreement, according to paragraph 21 thereof, was to continue for five years un-less terminated by mutual agreement or, by either party, for certain reasons; but the plaintiff's appointment as Assistant Factory Representative only four days later indicates that this contract of February 10th had only some formal purpose.

The subsequent conduct of the parties shows that the parties ended this contract of February 10th by mutual consent by defendant Corporation's appointment of plaintiff as Assistant Factory Representative and the plaintiff's acceptance of this appointment and his subsequent performance of the duties of this place. This appointment was inconsistent with the status of dealer and the plaintiff never acted as a dealer after he became an Assistant Factory Representative.

The second of plaintiff's contracts with the defendant Corporation was that made when he became an Assistant Factory Representative. The only writing which concerns this appointment is the letter of February 14, 1949 which we have mentioned; and the name of the addressee, written as F. E. Schulkins, was intended for the plaintiff's name. This letter fixed the plaintiff's compensation at a "salary" of $60 a week plus a commission, styled "overwriting," graduated according to the value of sales made. The testimony shows that an Assistant Factory Representative was assigned to and worked within a definite territory and that the sales on which "overwriting" was to be paid plaintiff were those made by the dealers working under him in this territory. The letter indicates in only a very general way the plaintiff's duties as Assistant Factory Representative, but the testimony shows that it was his function to hire and train salesmen for the defendant Corporation and by supervision and assistance to cause the salesmen within his territory to sell as much of the defendant Corporation's ware as possible. Methods of training were "outline" by said defendant, and materials to be used in training were furnished by said defendant. It is apparent from the plaintiff's testimony that it was not his function as Assistant Factory Representative to make independ-

ent sales in direct competition with his dealers and we infer that he did not, at least as a rule.

The letter appointing the plaintiff Assistant Factory Representative did not fix the period during which this appointment was to last, except, perhaps, by implication from the provision of a *weekly* salary; and the only testimony which might have some bearing on how long this period was to be is that of the plaintiff concerning E. T. Pierce's oral statements to him about the permanency of the plaintiff's employment which are mentioned below.

However, it is to be noted that this appointment was not made by, and that the letter of appointment was not written by E. T. Pierce; the appointment was made and the letter was executed for the defendant Corporation by the President of said Corporation, whose name was Wilson.

The plaintiff did not sign this letter nor did he sign any other writing concerning his contract of employment as Assistant Factory Representative.

The plaintiff's third contract with the defendant Corporation was that made concerning his appointment as Factory Representative and it is this contract which he says was breached. This is the contract referred to in the Issues submitted to the jury and plaintiff's rights against the defendant Corporation depend upon this contract. Plaintiff began to serve as Factory Representative on January 1, 1950, under the letter of December 16, 1949 which we have mentioned; and this letter was the only writing made concerning this appointment. It is much more detailed than the letter of February 14, 1949 appointing plaintiff Assistant Factory Representative. It described the plaintiff's appointment as Factory Representative as a "promotion"; prescribes the territory within which he shall serve (24 Texas counties) and styles this territory the Tyler, Texas territory; fixes his compensation at a "salary" of $85 a week plus a commission, also styled "overwriting", graduated according to the value of sales made, which, the testimony shows, were those made by the dealers operating in his territory. Some of his duties were stated but not all; the testimony shows that a function of a Factory Representative was to supervise, work with, and assist his Assistant Factory Representatives in the performance of their own functions. He was simply a more important agent of the defendant Corporation than was the Assistant Factory Representatives, charged with coordinating and promoting the defendant Corporation's business within a larger territory. The only provision in this letter concerning the duration of the appointment as Factory Representative was the following: "Of course you understand that a probational period of ninety days is set for all newly appointed Factory Representatives in which to accomplish that which is necessary to continue the privilege of working a new territory. By setting forth this period, which will begin January 1, 1950, it is clearly understood that the Management retains the privilege of terminating your assignment and relationship if it does not feel that constructive, proper and encouraging progress has been made and is being made by you. We do not hesitate, however, to reiterate that we have every confidence in your ability, otherwise we would not have undertaken to make this offer to you and incur the expense that the Home Office will be subjected to in establishing productively the territory that has been presently assigned to you."

Other than this letter of December 19, 1949, there is nothing in evidence which shows how long the plaintiff's appointment as Factory Representative was intended to last unless by implication from the payment of a *weekly* salary or unless, perhaps, the aforementioned statements of E. T. Pierce concerning the permanency of plaintiff's employment tend to do so.

The plaintiff testified that while he was Factory Representative he had not made sales directly to the consumer, and it is evident from this statement and from his description of his duties and from the evidence about his compensation that it was

not his function to make sales to or in competition with his dealers. In his testimony the plaintiff did refer to a "reorder made to maintain my stock" and he said "I had a stock of merchandise to maintain," and he refers to purchases by him, which, however, he does not otherwise explain, nor did he ever say what he did with the merchandise. There is no evidence, nor any claim by him, that he ever received or was entitled to a profit on goods sold. The terms of the letter of December 19th fixing a compensation and plaintiff's own description of his compensation, both in his testimony and his petition, show that he was entitled to no such profit. We infer that the stock of merchandise he mentioned was held by him for some purpose other than resale, to dealer or to consumer.

In our statement of plaintiff's argument we have referred to the contention that a part of the consideration given by him for his employment was the removal of his residence from one town to another and his purchase of a home.

The evidence is that at some indefinite time, but about the time the plaintiff was appointed Assistant Factory Representative the defendant E. T. Pierce, his immediate superior officer, suggested to him that he move his residence from Joaquin, where he lived when he became a dealer, to Tyler, and the reason for this suggestion was that the plaintiff would be more centrally located within his territory. The plaintiff, according to his testimony, took this suggestion for an order and undertook to comply but he said that he could get no place to stay in Tyler and that he moved to Henderson, not far from Tyler. This he did in June, 1949, about four months after his appointment. There is no evidence that this removal caused the plaintiff any loss and the expense involved was not proved. As we construe the evidence, there is nothing to show that this removal constituted any part of the consideration bargained for by the defendant Corporation in appointing the plaintiff Assistant Factory Representative, and it could not have been part of the consideration for his employment, six months

after his removal, as Factory Representative.

The plaintiff did buy a home in Henderson but this purchase was not made until about fifteen months after his appointment as Assistant Factory Representative and thus some eight or nine months after his appointment as Factory Representative. He must have bought this home not long before he was discharged. However, this purchase was not required by the defendant; and there is nothing to show that it was necessary to the performance of the plaintiff's duties or that defendant Corporation expected him to buy a home for that purpose. The plaintiff does not appear to have suffered any loss; he still resided in this place when the cause was tried. The purchase of this home was not consideration for plaintiff's employment.

We have referred to oral statements by E. T. Pierce to the plaintiff concerning the permanency of plaintiff's employment by the defendant. The only possible relevancy which these statements may have on this appeal is as a supplement to or a part of the plaintiff's contract of employment as Factory Representative. The plaintiff testified: "Q. Did you ever have a conversation with Mr. E. T. Pierce about your job when you became Assistant Factory Representative and Factory Representative as to whether or not it was a permanent job? A. I was given to understand it was permanent by those letters I received; I was led to believe it was permanent; he said it would be for years to come." This statement, of course, was indefinite, and it was the only statement by E. T. Pierce the terms of which were proved. The statements at S.F. 35 and 36 were obviously made before the appointment as Factory Representative and are not promises in behalf of the defendant Corporation, nor is that at S.F. 57. Both of these page references were to a conversation with E. T. Pierce about the purchase of a home, and on pre-trial deposition the plaintiff said that he first talked with Pierce about this *after* he moved to Henderson, which was about four months *after* he was made Assistant Factory Rep-

resentative and about six months *before* the appointment as Factory Representative. Assurances of permanent employment given him under such circumstances could not have been a part of his contract of employment. The following matters are also to be borne in mind in considering Pierce's statement to plaintiff: The representation was not made by the person who appointed the plaintiff, namely, Wilson, president of the defendant Corporation; nor do such representations appear in the plaintiff's letter of employment, executed by Mr. Wilson; plaintiff testified, in fact, that Wilson did not stipulate that plaintiff would be employed for any particular period of time. Further, there is no evidence that Mr. Pierce had any authority to stipulate the terms of plaintiff's contract of employment; since *both* of plaintiff's employments and both of his letters of appointment were made by the President of the defendant Corporation, the indication is to the contrary; and we note that the plaintiff testified that Mr. Pierce *recommended* him for both positions.

Plaintiff testified as follows concerning the term of his employment as Factory Representative: The letter of notification of his being promoted to Factory Representative is what he relied on as a contract with the company. He did not sign that instrument. "He said in that letter that I would be given a probationary period and then he goes on to say they anticipate many happy years." (The last clause is a mistake; the letter prescribes a probationary period but does not contain the other statement). He (meaning Wilson, the writer of the letter) did not stipulate that plaintiff would be employed for any particular period of time.—"I knew of no Factory Representative that had been replaced." When he got that letter from the Company "the thought never occurred" to him, whether he felt obligated to stay with the Company for any period of time. "I understood I was getting a life long vocation.

"Q. You didn't think it was your duty to do that? A. No: just an understanding.

"Q. Didn't you feel at perfect liberty to quit in a week if you didn't like the work? A. I had the probation period.

"Q. Didn't you realize that you had a perfect right to quit any time you chose? A. There was a possibility."

He never thought about whether he had that right. He didn't sign anything about going to work at any particular time. He never did write a letter to stay with them for a particular time.

"Q. You didn't feel that you were bound yourself to remain on with (defendant Corporation) for life or for any period of time, did you? A. I had that in mind.

"Q. You say you had in mind making a career of it but you knew you had not been told that? A. I never thought about that at all.

"Q. It is a fact, isn't it, that you had not, did not at the time, and were not agreeing to stay any particular period of time? A. It was nothing in writing.

"Q. Nothing verbal about agreeing to stay for any particular period of time? A. No, sir."

The testimony just quoted shows: That plaintiff regarded his letter of appointment as his contract; that he knew this letter prescribed no definite term of employment; and that he, himself, had not promised the defendant Corporation to remain in its employ for any period of time. Although he says that he "understood I was getting a life long vocation" he does not say where he got that impression and the only basis for it shown in the evidence consists in the "letters I received" and the oral statements of Mr. Pierce mentioned in the second paragraph above.

■ (2) We will first consider some elements of the plaintiff's argument.

It is our conclusion from the evidence stated above that when plaintiff ceased to be a "dealer" he became an employee of the defendant Corporation and remained an

employee until he was discharged, and that plaintiff's contract with the defendant Corporation as Factory Representative was one for personal services, as was that for Assistant Factory Representative. Neither of these contracts was the "exclusive sales contract" argued for by plaintiff.

We have stated our conclusion that the removal of plaintiff's residence and his purchase of a home were not consideration for his employment as Factory Representative. The only consideration for this employment shown by this record was plaintiff's acceptance of that employment and his performance of duties attached to that post.

(3) We will next consider the arguments as to the term of plaintiff's contract with defendant Corporation as Factory Representative.

We overrule plaintiff's argument that this contract was to continue "for such length of time as it (defendant Corporation) remained in business and the (plaintiff) chose to work as a sales manager in the assigned territory." There is no evidence of such a promise of the defendant Corporation.

As regards the defendant Corporation's argument that the contract of employment as Factory Representative was at will, there are two matters which may be considered. The first is the possibility that in the provisions of the letter of December 19th appointing plaintiff a Factory Representative which are quoted above there is an express reservation of the right to terminate the plaintiff's appointment and his services for said defendant as well. However, neither party claims any right under this provision and we will not discuss it.

 The other is this: If the letter of December 19th did not expressly reserve a right of termination beyond the probation period there is nothing (other than a possible implication from the payment of a weekly salary which we shall disregard) in this letter fixing any period during which plaintiff's employment shall continue, or making it conditional upon any event other than the will of the parties and the plaintiff's own testimony shows that he never promised the defendant Corporation to serve said defendant for any period of time. Under such a state of fact, the term of the contract would be indefinite and it is held that a contract for personal service which fixes no period during which it shall continue is at the will of the parties. See: East Line & R. R. Ry. Co. v. Scott, 72 Tex. 70, 10 S. W. 99; St. Louis, Southwestern Ry. Co. v. Griffin, 106 Tex. 477, 171 S.W. 703, L.R.A. 1917B, 1108; Dallas Hotel Co. v. McCue, Tex.Civ.App., 25 S.W.2d 902, at page 905.

The only evidence which might serve to fix the term of plaintiff's service and thus to *supplement* the letter of appointment of December 19th is plaintiff's "understanding" that he had "permanent" employment and "a life long vocation;" but plaintiff also said that he regarded this letter of December 19th as a contract with defendant Corporation and this letter contains nothing on which to base such an understanding. If plaintiff regarded the letter of December 19th as a contract this "understanding" was not a part of his contract of employment. The only sources of such an understanding which the plaintiff identifies are certain "letters I received" and a statement by E. T. Pierce. No letters concerning plaintiff's employment are in evidence except those of February 14th and December 19th which appointed plaintiff Assistant Factory Representative and Factory Representative, respectively, and these letters contain no support for plaintiff's "understanding". The only declaration of E. T. Pierce to which plaintiff testified was that "it would be for years to come." This states no definite period, certainly not one for life or, to refer to plaintiff's present contention, as long as defendant Corporation remained in business. We have mentioned circumstances connected with Pierce's statements. The appointments and the letters of appointment were made and were written by another person, yet neither the letter of February 14th nor the letter of December 19th fixed any term of service (we are, as stated, disregarding any possible implication). If the person making the plaintiff's appointments mentioned no term the plaintiff got none at the time of his appointment because he

made his contract with the defendant Corporation through the officer who then appointed him; and the plaintiff never did say that his contracts of employment were changed or that the person who appointed him had told him how long he would be employed. He said, instead, that this person did not stipulate that plaintiff would be employed for any particular period of time. And another thing: The letter of December 19th appointing plaintiff Factory Representative is inconsistent with assurances that plaintiff had employment for a term because this letter put plaintiff on probation for 90 days and during at least this period, the letter of December 19th, appointing plaintiff a Factory Representative, expressly reserved a right of termination of both appointment *and services as well* in the quotation made above. Furthermore, as we have pointed out, Pierce was not shown to have authority to supplement the contract of employment made between plaintiff and the President of defendant Corporation and the circumstances indicate that he actually did have none. It seems to us that, all things considered, the plaintiff failed to show that the defendant Corporation promised him employment as Factory Representative for any period of time not dependent upon the will of the parties.

This conclusion is strengthened by the circumstances under which the plaintiff's employment as Factory Representative was made: The plaintiff's experience was limited and his connection with the defendant Corporation had only existed from some date in October, 1948 until December 19, 1949, or for about a year; the letter of December 19th refers to plaintiff's territory as a new territory and it puts him on probation for ninety days; and the nature of plaintiff's employment was not such as would normally call for a contract for such a period of time as plaintiff claims.

These comments make immaterial the plaintiff's argument that defendant Corporation might be bound to him although he was not bound to it. This argument could not apply unless the defendant Corporation made a promise for a term not dependent on the parties' will.

We hold that the defendant Corporation was entitled to an instructed verdict in its favor and we sustain Points 1 and 4.

We also sustain Point 6.

(4) The question, whether the defendant Corporation violated the plaintiff's contract of employment by discharging him was submitted by Special Issue 5, which reads:

"Do you find from a preponderance of the evidence that the discharge of Frank L. Schulkins by the Advance Aluminum Castings Corporation was a breach of the contract between Advance Aluminum Castings Corporation and Frank L. Schulkins whereby Frank L. Schulkins was employed as Factory Representative? Answer 'yes' or 'no'." Under Point 9 it is assigned as error that this issue submitted a question of law. This point is sustained on the authority of City of Port Arthur v. Young, Tex.Civ.App., 37 S.W.2d 385.

(5) Under Special Issue 2 the jury found that plaintiff's contract with defendant Corporation as Factory Representative was to continue for an "indefinite" time from January 1, 1950, this being the date when plaintiff began to serve in that place and the comments above show that this finding was supported by the evidence. This was the only Issue submitting a question as to the provisions of plaintiff's contract as Factory Representative. The answer to Issue 2 will have to be literally interpreted and such an interpretation makes the contract at will under the rule of decision cited above. The jury must have adopted the defendant's contention that the contract of employment as Factory Representative fixed no term of service of plaintiff, and the defendant Corporation was entitled to judgment on this finding since the finding under Issue 5, being one of law and being the only Issue submitting a question concerning breach, may be disregarded. We sustain Point 7. Judgment may be rendered in this court on the verdict as well as on the evidence. See: American Mutual Liability Ins. Co. v. Parker, 144 Tex. 453, 191 S.W.2d 844, at page 848 (Reh. ref.); Texas & N. O. R. Co. v. Harris, Tex.Civ.App., 101 S.W.2d 640.

These conclusions make it unnecessary for us to discuss Points of Error not mentioned.

The judgment of the trial court is reversed and judgment is here rendered that plaintiff take nothing against the defendant Advance Aluminum Castings Corporation.

ANDERSON, J., disqualified and took no part in this decision.