EMMORD'S INC., Appellant,

v.

H. L. OBERMILLER, Appellee.

No. 932.

Court of Civil Appeals of Texas, Corpus Christi.

June 26, 1975.

Rehearing Denied Aug. 29, 1975.

Bill Blackburn, Corpus Christi, for appellant.

Robert M. Kendrick, Bonniwell, Atwill & Kendrick, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

In this suit on a personal services contract, H. L. Obermiller sued Emmord's, Inc. to recover for accounting services rendered. The contract resulted from a meeting of the parties in May of 1969. It is undisputed that Emmord's was to pay Obermiller $10.00 per hour for his services. At the trial, defendant argued that the agreement limited the amount charged by plaintiff to $300.00 per month. The jury found that no such limitation existed. Defendant does not attack this finding on appeal.

The case was submitted to the jury on special issues in the trial court. Defendant there requested, and the court refused to submit, seventeen special issues to the jury. The defendant does here complain of those refusals.

Based on the jury's answers to special issues and upon stipulation entered into by the parties, the trial court entered judgment in favor of Obermiller in the amount of $4,350.00 and further awarded him reasonable attorney fees in the amount of $1,337.50. Emmord's appeals from that judgment.

The entire dispute, as presented to us on appeal, centers around the failure of appellee to render billings which reflected total charges for all services performed by appellee during the billing period reflected on each bill. As a result of appellee's failure to fully bill appellant each month, appellant argues that appellee has substantially breached the employment contract. The foundation of this argument is appellant's contention that such a billing procedure was an implied term of the contract entered into between appellee and appellant. Appellant further argues that such breach by appellee precludes appellee's recovery under

the contract. Alternatively, appellant argues that the billings issued by appellee were false, misleading, and were relied upon by appellant as being the total amount due appellee for services rendered. Thus, appellant contends, appellee is estopped from seeking recovery under the terms of the contract.

Appellant's points of error numbered 1, 2, 5, 6, 7, and 18 address themselves to appellant's "breach of contract" theory.

Point of error number 1 asserts that the trial court erred in refusing to grant appellant's motion for judgment non obstante veredicto because the undisputed evidence showed that appellee breached his agreement, implied as a matter of law, that all bills presented to appellant would reflect all charges for services rendered by appellee up to and including the last day of the time period shown on the bill. Point number 2 is identical to point number 1 with the exception that point number 2 asserts that the billing agreement is implied in fact.

Points of errors numbered 5, 6, 7, and 18 complain of the trial court's refusal of the following special issues requested by appellant:

### "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that as part of the employment agreement between Plaintiff and Defendant there was an implied agreement that all bills rendered by Plaintiff to Defendant would contain all charges for services rendered by Plaintiff up to and including the full time period shown the bill as the billing period?

Answer: 'We do' or 'We do not'.

If you have answered Special Issue No. 1, 'We do', and only in that event, then answer:

### SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that Plaintiff breached the

agreement inquired about in Special Issue No. 1 above?

Answer: 'We do' or 'We do not'.

If you have answered Special Issue No. 1 'We do', and only in that event, then answer:

## SPECIAL ISSUE NO. 3

Do you find that the breach of the agreement by the Plaintiff was substantial?

Answer: 'We do' or 'We do not'.

## SPECIAL ISSUE NO. 15

Do you find from a preponderance of the evidence that at the times in question there was a custom or usage in South Texas that bills sent by accountants to their clients would contain all charges rendered for services performed up through the time period shown to be covered by the face of the bill?

Answer: 'We do' or 'We do not'."

We will discuss these contentions collectively. With the exception of the dispute about the alleged $300.00 per month maximum billing agreement, there is no conflict in the evidence in regard to the remaining terms of the contract. And there is no evidence specifically that the contract encompassed an implied agreement that each bill would reflect all charges by appellee for services rendered up to and including the last day of the time period shown on the bill. The negotiations through which a contract was entered into were conducted by appellee and Mr. Hendricks, a director of appellant-corporation. Obermiller testified that he and Hendricks did not discuss how appellee would bill appellant. Appellee merely told appellant that he would bill appellant. When Hendricks was asked if there was an agreement when and how appellee would bill appellant, Hendricks stated: "We didn't have any specific agreement on that." Hendricks went on to explain that "It was understood on my part that we'd be billed monthly".

Thus, we see that no agreement was entered into in regard to billing procedures. There is evidence about what Hendricks thought would be the procedure. The intention of the parties, however, is to be gathered from the language used by the parties and not from the secret intentions or suppositions of one of the parties. *Magnolia Petroleum Co. v. Storm*, 239 S.W.2d 437 (Tex.Civ.App.—El Paso 1950, writ ref'd n. r. e.); *Easterwood v. Liberty Mut. Ins. Co.*, 93 S.W.2d 1173 (Tex.Civ.App.—Waco 1936, writ ref'd).

This Court cannot make contracts for parties. Further, we can declare implied covenants to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties in the contract which they have made. Before a covenant will be implied, it must appear from the express terms of the contract that it was so clearly in the contemplation of the parties that they deemed it unnecessary to express it or that it is necessary to imply such covenant in order to give effect to and effectuate the purpose of the contract as a whole. *Freeport Sulphur Co. v. American Sulphur Royalty Co of Texas*, 117 Tex. 439, 6 S.W.2d 1039 (1928). Here there is no indication in the express terms of the contract that both parties contemplated a monthly billing system whereby each bill would set out the total charges up to and including the final date of the billing agreement. Although appellant's agent stated what he *"understood"*, he unequivocally stated "We didn't have any specific agreement on that" (billing procedure). We also note that appellant's goal in entering into the contract with appellee was to obtain accounting services. Any procedure for submitting bills would be ancillary to the true purpose of the contract.

In its brief, appellant points out the disadvantages of the method of partial billing used by appellee. Indeed, Mr. Hendricks testified that such a billing procedure would

make it difficult for businessmen to manage their financial affairs. In that regard, we refer to *Freeport Sulphur Co.* at page 1042, wherein our Supreme Court, quoting from *Grass v. Big Creek Development Co.*, 75 W.Va. 719, 84 S.E. 750, states:

"It is not enough to say it is necessary to make the contract fair, or that it ought to have contained a stipulation which is not found in it, or that, without such covenant, it would be improvident or unwise or would operate unjustly; for men have the right to make such contracts. . . ."

■ About custom and usage, evidence is admissible to explain an ambiguous contract or to add to it elements not in contravention of its terms. *Fox v. Gallo,* 428 S.W.2d 127 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.). But whether the understanding of the parties is made with reference to a custom and thereby intending such custom to be a part of the contract is a question of fact for the jury. See 58 Tex. Jur.2d *Usages and Customs* § 24 (1964). So a refusal to submit a properly requested special issue on custom and usage can be error. But the trial court here did not so err because the appellant requested no issue about the intention of the parties.

■ Assuming, arguendo, that appellant is correct in its contentions that an implied billing covenant does exist, appellant still cannot prevail on its "breach of contract" theory. The covenant would, at best, go only to a part of the consideration of the contract. Any breach of such covenant can be compensated in damages. Therefore the covenant is independent. *World Broadcasting System, Inc. v. Eagle Broadcasting Co., Inc.,* 162 S.W.2d 463 (Tex. Civ.App.—San Antonio 1942, writ dism'd). Appellant did not request any issues regarding the existence or extent of damages resulting from the alleged breach. Appellant could defeat appellee's recovery only to the extent of the damages suffered by appellant. Because it failed to request issues inquiring of the existence of damages and

the extent thereof, no judgment favorable to appellant could have been based upon the jury's answers to appellant's requested special issues numbered 1, 2, 3, and 15. Therefore the appellant's motion for judgment non obstante veredicto was properly refused. Under those circumstances, the refusal of requested issues numbered 1, 2, 3, and 15, also was not error. See *Southwestern Settlement & Development Corporation v. State,* 282 S.W.2d 78 (Tex.Civ.App.—Beaumont 1955, writ ref'd n. r. e.).

■ We would further note that requested issue number 2 was properly refused because it called on the jury to determine the effect ("breached") of appellee's actions upon the oral contract between the parties. Such is clearly a question of law and as such is improper for submission. *Foerster v. Peoples,* 362 S.W.2d 918 (Tex.Civ.App.—Amarillo 1962, no writ); *Advance Aluminum Castings Corp. v. Schulkins,* 267 S.W.2d 174 (Tex.Civ.App.—Beaumont 1954, no writ); *City of Port Arthur v. Young,* 37 S.W.2d 385 (Tex.Civ.App.—Beaumont 1931, writ ref'd). Appellant's points numbered 1, 2, 5, 6, 7, and 18 are overruled.

Appellant's points of error numbered 3, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 address themselves to appellant's contention that appellee is estopped from asserting his claim for services rendered in excess of the amounts claimed due on the monthly bills submitted by appellee to appellant. Point number 3 complains that the trial court erred in overruling appellant's motion for judgment non obstante veredicto. Points numbered 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 complain of the trial court's refusal to submit the following requested special issues:

"SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the monthly bills submitted by Plaintiff to Defendant constituted representations by Plaintiff that the monthly bill was the total amount for which Plaintiff intended to seek compen-

sation from Defendant for all accounting services rendered up to and during the month shown on the face of the bill?

Answer: 'We do' or 'We do not'.

## SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that Plaintiff made such representation with the intent to make Defendant believe that the bill covered all amounts owed by Defendant?

Answer: 'We do' or 'We do not'.

If you have answered Special Issue No. 4 'We do', and only in that event, then answer:

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that such representation was false?

Answer: 'We do' or 'We do not'.

If you have answered Special Issue No. 4 'We do', and only in that event, then answer:

## SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that Defendant would have discharged Plaintiff as its accountant or would have immediately negotiated a contract with Plaintiff wherein Defendant would not be liable for the money for which Plaintiff sues in this suit except for such representation?

Answer: 'We do' or 'We do not'.

## SPECIAL ISSUE NO. 8

From a preponderance of the evidence state the month and year in which Defendant would have discharged Plaintiff except for such representation?

## SPECIAL ISSUE NO. 10

Do you find from a preponderance of the evidence that after July 31, 1971, Plain-

tiff failed to notify Defendant upon the receipt of each $300 monthly payment that such payment was not sufficient to pay for all of Plaintiff's accounting services rendered to date?

Answer: 'We do' or 'We do not'.

## SPECIAL ISSUE NO. 11

Do you find from a preponderance of the evidence that Defendant, after July 31, 1971, relied on Plaintiff's silence with respect to the sufficiency of each $300 monthly payment either by not discharging Plaintiff or by not negotiating a new contract with him in which it was agreed by both parties that his compensation would be limited to $300 per month?

Answer: 'We do' or 'We do not'.

## SPECIAL ISSUE NO. 12

Do you find from a preponderance of the evidence that the Plaintiff represented to Defendant's employees at the time that he submitted to them the $1,800 bill that it was not to be paid, but was being submitted by him simply for the purpose of reducing Defendant's federal income tax liability?

Answer: 'We do' or 'We do not'.

## SPECIAL ISSUE NO. 13

Do you find from a preponderance of the evidence that such representation, if any, was the cause of such bill not being reported to Joe Hendricks or E. E. Baldwin?

Answer: 'We do' or 'We do not'.

## SPECIAL ISSUE NO. 14

Do you find from a preponderance of the evidence that if such bill had been reported to Joe Hendricks or E. E. Baldwin, Plaintiff's services would have been terminated at that time?

Answer: 'We do' or 'We do not'."

Requested special issues numbered 4, 5, 6, 7, and 8 address themselves to appellant's theory that appellee is estopped from recovering the funds alleged due him because appellee, through his monthly billing to appellant, represented that the amount of each bill was the total sum due for services performed during the time period to which the bill applied.

The essential elements of estoppel, as set out in *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952) are:

(1) A false representation or concealment of material facts.

(2) Made with knowledge, actual or constructive, of the facts.

(3) The party to whom it was made must have been without knowledge or the means of knowledge of the real facts.

(4) It must have been made with the intention that it should be acted on.

(5) The party to whom it was made must have relied on or acted on it to his prejudice.

■ At page 10 of appellant's reply brief, appellant admits that requested special issue number 5 was not substantially correct within the meaning of Rule 279, Texas Rules of Civil Procedure. We accept this as a waiver of appellant's point of error number 9. In doing so, we express no opinion of the accuracy of appellant's statement of the law in regard to conditional submission.

Appellant failed to submit a special issue inquiring whether appellant was without knowledge or the means of knowledge of the real facts. In support of its contention, appellant asserts that all elements of estoppel not inquired about in its requested special issues are established as a matter of law. This contention is without merit.

■ Appellee testified that he repeatedly informed appellant, through its manager and shareholder, Mr. Elmer, that he was doing more work than he was getting paid for and that payments in excess of $300.00 per month were necessary. The evidence also reveals that appellee presented appellant with a bill for $1,800.00 in October of 1971. This evidence coupled with the fact that appellant did not immediately discharge appellee would certainly support an inference that appellant was aware of the fact that the monthly billing submitted by appellee did not represent total charges for the time period covered by each bill. The issue of appellant's knowledge or ability to know of the facts regarding total charges for services rendered by appellee, being controverted, was not established as a matter of law. It was the duty of appellant to submit issues covering all controverted elements of its defense of estoppel. Having failed to do so, it cannot complain of the trial court's refusal to submit an incomplete presentation of its defense. *Southwestern Settlement & Development Corporation v. State*, supra; *Pacific Employers Ins. Co. v. Brasher*, 234 S.W.2d 698 (Tex.Civ.App.—Austin 1950, writ ref'd n. r. e.). The trial court properly refused to submit appellant's requested special issues numbered 4, 5, 6, 7, and 8.

Appellant's requested issues numbered 10 and 11 appear to assert the defense of estoppel on the theory that appellee's acceptance of monthly payments after July 31, 1971, without comment to appellant, constituted a false representation.

■ Special issue number 10 does not inquire of an ultimate fact. It appears to be addressed to the issue of appellant's knowledge that $300.00 per month would not completely compensate appellee for services rendered. However, it merely asks whether appellee failed to notify appellant that such $300.00 per month payments would not be sufficient to pay for all accounting services rendered to date. This question relates only to a phase of the ultimate issue. Therefore, requested issue number 10 is evidentiary and was properly refused. *Perales v. Braslau's Furniture Company*, 493 S.W.2d 638 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.).

In reference to our discussion of requested issue number 11, we note that no proper issue was requested regarding appellant's knowledge or ability to know of the true fact concerning the sufficiency of the $300.00 per month payments. As previously noted, this is an essential element of appellant's defense.

We also note that appellant has failed to inquire whether appellee made a false representation or concealed a material fact. In light of Mr. Obermiller's testimony that he repeatedly told appellant that the $300.00 per month payments were not sufficient and in light of the submission of a bill for $1,800.00 in October of 1971, the issue of a false representation or concealment of a material fact is a contested issue and appellant was obligated to submit an issue thereon.

Having failed to submit the controlling issues on this theory of appellant's defense of estoppel, the trial court properly refused to submit requested special issues numbered 10 and 11.

Appellant sought to submit its third theory of estoppel to the jury through its requested issues numbered 12, 13, and 14. This theory of estoppel is apparently founded upon the theory that appellee falsely represented to appellant that the $1,800.00 bill did not have to be paid. This submission of the defense of estoppel is defective because appellant has failed to submit an issue to the jury inquiring of appellant's knowledge or ability to obtain knowledge of the true facts. As previously noted, the evidence upon this aspect of the case is conflicting and it was incumbent on appellant to submit this controlling issue properly to the trial court.

Further, appellant did not inquire whether the appellee made the "representation" with the intent that it be acted on. Mr. Obermiller testified that he mentioned the bill to appellant's manager during the following year. He stated that he did not expect immediate payment. The evidence on this ultimate fact is, therefore, conflicting and it was appellant's duty to submit this controlling issue to the court in proper form.

Because of our previous discussions on appellant's theories of estoppel, it is obvious that the appellant has failed to submit proper issues on all controverted ultimate issues of its defense of estoppel. There was conflicting evidence upon various elements of appellant's defense. When reviewing the trial court's refusal to grant a motion non obstante veredicto, this Court considers all testimony in the light most favorable to the party against whom the motion for judgment non obstante veredicto is sought. *Shoppers World v. Villarreal*, 518 S.W.2d 913 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e). The trial court, therefore, did not err in refusing to grant appellant's motion for judgment non obstante veredicto. Appellant's points of error numbered 3, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 are overruled.

By its point of error number 4, appellant complains that appellee cannot collect for the services represented by the $1,800.00 billing. Appellant contends that this portion of the debt is barred by Tex. Rev.Civ.Stat.Ann. art. 5526 (1958). This contention is without merit. Here we have a running account, spanning over three years. There is no evidence that appellant directed that payment be applied to any particular debt. In such a case, payments on the account as a whole are applied by law to the oldest unpaid portion of the account. *Prowell v. Berry-Barnett Grocery Company*, 462 S.W.2d 53 (Tex.Civ.App.— Waco 1970, writ ref'd). Appellant's point of error number 4 is overruled.

The judgment of the trial court is affirmed.