In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00062-CV


______________________________




KENNETH G. LUPO, Appellant



V.



BILL BERRY, D/B/A AUTOCRAFT PAINT & BODY, AND


HARRIS COUNTY SHOP, INC., Appellees



 


On Appeal from the 333rd Judicial District Court


Harris County, Texas


Trial Court No. 1999-03599




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Grant




______________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N



 Kenneth G. Lupo appeals the trial court's granting of summary judgment in favor of Harris
County Body Shop (Body Shop) in Lupo's action for its damages for improper repair of Lupo's
vehicle. Before the Body Shop filed its Motion for Summary Judgment, Lupo had settled with Bill
Berry, d/b/a Autocraft Paint & Body, another defendant in the case, by means of an Agreed
Judgment. 

 Lupo contends the court erred in granting the no-evidence summary judgment because Lupo's
affidavit raised a genuine issue of material fact. Lupo also contends the trial court erred in striking
the affidavits of Lupo's witnesses because the filing of the affidavits was not in violation of the Rule
11 Agreement. 

 Lupo took his vehicle to Autocraft Paint & Body, who subsequently subcontracted with the
Body Shop to perform body and frame work. Lupo spoke with employees of the Body Shop on
numerous occasions, and they assured him that they were competent, ready, and able to repair the
vehicle to factory specifications and that they were doing the work on a timely basis. A few months
later, mechanics at Advantage, a different company, informed Lupo they had noticed deficiencies
in the repairs performed by the Body Shop. 

 Lupo filed suit against the Body Shop on January 26, 1999, alleging that the actions and
representations of the Body Shop constituted breach of fiduciary duty, common-law fraud, fraudulent
misrepresentation, conversion, and violated the Texas Deceptive Trade Practices Act (DTPA). The
Body Shop filed a general denial on February 18. 

 The Body Shop filed a No-Evidence Motion for Summary Judgment on November 16, 1999,
attacking each of Lupo's causes of actions and a hearing was scheduled for December 10. On
December 3, Lupo filed a response and brief in support thereof to the motion, with a controverting
affidavit by Lupo. 

 On December 9, the Body Shop agreed to reschedule the hearing and entered into a Rule 11
Agreement, filed on December 10, in which Lupo agreed not to amend his response. The hearing
was rescheduled for January 28, 2000. 

 On January 21, Lupo filed the affidavits of Jim Bartlett and Mike Sniderwin in support of
his response to the motion for summary judgment. On January 25, the Body Shop filed a reply and
objection to Lupo's late filing of affidavits in response to the motion. 

 The trial court excluded the additional affidavits and signed a final order granting summary
judgment on February 26, 2001. Lupo filed a Notice of Appeal on March 28, 2001.

 Lupo contends the trial court erred in striking the affidavits of Lupo's witnesses because the
filing of the affidavits was not in violation of the Rule 11 Agreement. The trial court's ruling on the
exclusion of evidence is reviewed for abuse of discretion. See Baker v. Gregg County, 33 S.W.3d
72, 77 (Tex. App.-Texarkana 2000, pet. dism'd).

 The Body Shop objected to the filing of the additional affidavits on two grounds: that it
violated the Rule 11 Agreement and that the affidavits were not proper summary judgment evidence
because Lupo failed to incorporate or make reference to them in his original response. The order did
not specify on which ground the order was granted. Lupo argues only that the affidavits did not
violate the Rule 11 Agreement; he does not address, and therefore waives, any error on the
alternative ground that the affidavits were not proper summary judgment evidence. 

 An affidavit must be expressly incorporated or mentioned in the response to be considered
proper summary judgment evidence. Boeker v. Syptak, 916 S.W.2d 59, 61-62 (Tex. App.-Houston
[1st Dist.] 1996, no writ). Because Lupo did not expressly incorporate or mention the additional
affidavits in his response, they could not be proper summary judgment evidence. Therefore, the trial
court did not abuse its discretion in excluding the additional affidavits. This point is overruled. 

 Lupo also contends the trial court erred as a matter of law in granting the summary judgment
because Lupo's affidavit raised a genuine issue of material fact. 

 In reviewing a no-evidence summary judgment, the court applies the same legal sufficiency
standard as it applies in reviewing a directed verdict. Drew v. Harris County Hosp. Ass'n, 20 S.W.3d
244, 247 (Tex. App.-Texarkana 2000, no pet.). The evidence must be considered in the light most
favorable to the nonmovant, disregarding all contrary evidence and inferences. Id. A no-evidence
summary judgment is properly granted when the nonmovant fails to present more than a scintilla of
probative evidence to raise a genuine issue of material fact on the attacked element. Id. 

 The failure of the nonmovant to address each element attacked in the summary judgment
motion waives any error with respect to those unaddressed elements. Lawrence v. Lawrence, 911
S.W.2d 450, 452 (Tex. App.-Texarkana 1995, writ denied). On appeal, the appellant has the burden
to demonstrate that his evidence raises a genuine fact issue on each challenged element which
precluded summary judgment. Espalin v. Children's Med. Ctr. of Dallas, 27 S.W.3d 675, 683 (Tex.
App.-Dallas 2000, no pet.). The trial court's judgment will be upheld if it is correct on any theory
of law applicable to the case. Toranto v. Wall, 891 S.W.2d 3, 4 (Tex. App.-Texarkana 1994, no
writ). 

 The Body Shop's no-evidence summary judgment motion challenged elements of every cause
of action raised in Lupo's pleadings. Regarding the claims for common-law fraud, fraudulent
misrepresentation, and DTPA violations, the Body Shop challenged not only that Lupo could not
identify the employees that made representations to him, but that Lupo had no evidence that any
representations were false, made recklessly, or with intent for Lupo to rely on them. Specifically,
Lupo had no evidence that the Body Shop was not competent, ready, and able to repair the vehicle
to factory specifications, that it had not performed the work on a timely basis, or that Lupo suffered
any injury as a result of the representations.

 Even if we construe Lupo's brief broadly to include an argument that evidence was presented
to raise a fact question as to whether the representations made to Lupo were false, the only evidence
that could relate to this argument is the portion of Lupo's affidavit in which Lupo recounts
conclusory statements made by the mechanics at Advantage. The Advantage mechanics stated that
the Body Shop "must have used a frame machine incapable of bringing the vehicle into compliance
with the factory specifications, and that the agents, employees and representatives of Defendant [H.S.
Body Shop] knew or should have known that their frame machine was inadequate for said purpose." 
A conclusory affidavit is not enough to raise a fact issue. Ryland Group, Inc. v. Hood, 924 S.W.2d
120, 122 (Tex. 1996). Therefore, Lupo's affidavit failed to raise a genuine issue of material fact that
the Body Shop made misrepresentations to Lupo. 

 Additionally, Texas Rule of Civil Procedure 166a(f) provides, "Supporting and opposing
affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in
evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated
therein." Tex. R. Civ. P. 166a(f). The Advantage mechanics' statements would not be proper
summary judgment proof that the equipment used by the Body Shop was inadequate or that
employees of the Body Shop knew the equipment was inadequate, because the statement was not
based on the mechanics' personal knowledge of the equipment owned by the Body Shop. This point
is overruled. 


 The judgment of the trial court is affirmed. 




 Ben Z. Grant

 Justice

 

Date Submitted: May 29, 2002

Date Decided: June 10, 2002


Do Not Publish



 S.W. 1011 (Tex. Civ. App.—Beaumont 1925,
no writ). Specific performance is available only when the plaintiff's remedy at law is
inadequate, but it is available to enforce a contract to convey real estate because an action
for damages is inadequate in such a case. Milliken v. Townsend, 16 S.W.2d 259 (Tex.
Comm'n App. 1929).
          The Trusts also contend the letter agreements are invalid because they do not
comply with the statute of frauds. Tex. Bus. & Com. Code Ann. § 26.01 (Vernon 2002). 
They argue that the letter agreements do not adequately describe the interests to which
they pertain. To avoid violating the statute of frauds, an agreement for the sale of land
must furnish within itself, or by reference to other existing writings, records, or data,
information by which the land to be conveyed may be identified with reasonable certainty. 
MTrust Corp. v. LJH Corp., 837 S.W.2d 250 (Tex. App.—Fort Worth 1992, writ denied). 
The trial court found that the letter agreements here satisfied that requirement, and the
court's finding is supported by sufficient evidence. Aside from that finding, however, there
is another basis, also supported by sufficient evidence and the trial court's findings, on
which the letter agreements may be held valid despite the statute of frauds.
          A defense of the statute of frauds is unavailable when the party seeking to rely on
the defense recognizes the challenged agreements, acts under their provisions, accepts
benefits under them, and even performs under them over a long period of time without
complaint or action claiming they are invalid. 626 Joint Venture v. Spinks, 873 S.W.2d 73
(Tex. App.—Austin 1993, no writ); Estate of Kaiser v. Gifford, 692 S.W.2d 525 (Tex.
App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); Le Sage v. Dunaway, 195 S.W.2d 729
(Tex. Civ. App.—Waco 1946, no writ); Callahan v. Walsh, 49 S.W.2d 945 (Tex. Civ.
App.—San Antonio 1932, writ ref'd).
          In this case, both the Trusts and the Griffins acted in full recognition and acceptance
of the validity of the letter agreements for more than twenty years, accepting the benefits
and obligations of those agreements and performing their respective obligations. Indeed,
the Trusts even made assignments of the interests covered by the agreements and had
them recorded in the year 2000. Because the Griffins challenged the assignments as not
being in full compliance with the letter agreements, this suit resulted and later was
expanded to include additional controversies concerning the parties' compliance with the
agreements and other matters. Because both parties recognized their obligations under
the letter agreements and acted under their provisions until the development of the legal
action, the Trusts, and indeed the Griffins as well, are estopped to assert any invalidity of
the letter agreements by reason of the statute of frauds.
          The same theory applies to the Trusts' contention that all of the Griffins' causes of
action are barred by limitations. By recognizing the validity of the letter agreements for
over twenty years, acting under their terms, accepting the benefits under them, and
disputing with the Griffins only as to what kind of performance would comply with the
agreements until about the very time suit was filed, the Trusts are estopped to claim that
limitations have barred the actions. State v. Tex. Elec. Serv. Co., 488 S.W.2d 878 (Tex.
Civ. App.—Fort Worth 1972, no writ); Lanpar Co. v. Stanfield, 474 S.W.2d 753 (Tex. Civ.
App.—Waco 1971, writ ref'd n.r.e.); Moutos v. San Saba County Peanut Growers Ass'n,
268 S.W.2d 761 (Tex. Civ. App.—Austin 1954, no writ); see also Irwin v. Prestressed
Structures, Inc., 442 S.W.2d 406 (Tex. Civ. App.—Amarillo 1969, writ ref'd n.r.e.) (holding,
after trial, that estoppel was not proved); Rauch v. Hearne, 189 S.W.2d 342 (Tex. Civ.
App.—Waco 1945, writ ref'd w.o.m.). Additionally, the trial court found that the Griffins
instituted suit for specific performance within four years from the time the Trusts breached
the letter agreements by failing to properly assign the interests. Tex. Civ. Prac. & Rem.
Code Ann. § 16.004(a)(1) (Vernon 2002). Thus, limitations would not bar the action in any
event.
          The Trusts contend the trial court erred in "reforming" the assignments of the
working interests to comply with the provisions of the letter agreements. The Trusts made
and recorded assignments, but the Griffins contended the assignments were not in
compliance with the terms of the letter agreements. The trial court ordered the
assignments "reformed" to comply with the letter agreements.
          The Trusts argue that reformation of the assignments was not proper because there
are no pleadings to support it, there is no evidence there was a mistake in the kind of
assignments required, and there is insufficient evidence to support reformation. Putting
this case in its proper context, we note that the trial court did not apply the traditional
equitable doctrine of reformation to correct a mistake. Although the court did find there
was a mutual mistake in making the assignments, what it actually did was to specifically
enforce the letter agreements' requirements for assignments, and order that the
assignments be "reformed" to conform to those requirements. The trial court's actions in
this regard were proper, and the judgment for specific performance is not impugned or
invalidated simply because the trial court referred to the action as reforming the
assignments.
          Moreover, as we have already noted, reformation and specific performance may be
obtained in the same action. The agreement may be reformed and corrected, as well as
specifically enforced, in the same suit. Tyrrell-Combest Realty Co., 268 S.W. 1011; see
also Ballard, 199 S.W. 305.
          The Trusts assert that, because some of the letter agreements provide that when
an investor in a well complies with the provisions of the letter agreement the Trusts will
"assign or credit" the interest to the investor, the Trusts have no obligation to assign the
interest, but may instead elect to simply credit the investor with such interest. We reject
this argument. The letter agreements provide that the participants "shall own and they [the
Trusts] will assign or credit" to them their undivided interests in the working interest if and
when the well is completed as a producer. Considering the fact that the letter agreements
speak in terms of the participants owning their interests, and considering the four corners
of the letter agreements, we construe them as giving the participants the right to elect
whether to take an assignment or to allow the Trusts to simply credit them with their
interests. A simple credit of their interests would not give the participants the means to
have their "ownership" reflected in the deed records. The trial court came to the same
conclusion, since it found that the participants were entitled to assignments of their
interests upon completion of each well.
          The Trusts also contend the trial court erred in awarding Robert Griffin and Robert
Griffin, Jr., a proportionate part of the proceeds from the Tejas settlement, because they
did not properly and timely pay their share of the litigation expenses as required by the
participation agreement.
          The Trusts and the Griffins executed letter agreements in May of 1992, providing
that if the Griffins paid their pro rata share of the legal expenses in the Tejas litigation, they
would be entitled to share in the proceeds received as a result of that litigation. The
agreements provided that the Trusts would bill the investors monthly for their shares of the
legal expenses, and that the investors would be required to pay the Trusts their share of
those expenses within thirty days from receiving an invoice for them. The agreements also
provided that if the investors failed more than once to pay the invoices within thirty days
of receiving them, they would forfeit their right to share in the litigation proceeds.
          On April 1, 1997, the Trusts made their first billing to Robert Griffin and Robert
Griffin, Jr., for their share of the litigation expenses for the preceding twenty months. 
Robert Griffin was billed for $3,320.51 and Robert Griffin, Jr., was billed for $4,980.74. 
They did not pay these invoices, but instead had their attorney write to the Trusts on
April 14, 1997. They complained about the Trusts' action in waiting so long and
accumulating such large sums before billing for them, and they offered to discharge these
amounts by paying $100.00 per month for forty-one months. The Trusts did not accept this
offer. On April 30, 1997, Robert Griffin and Robert Griffin, Jr., received other billings from
the Trusts for $177.31 and $265.97, respectively. They failed to pay these amounts. The
Trusts included with their invoices a letter insisting that they make prompt payment of the
invoices while the Trusts addressed their "concerns" about the late, aggregated billings. 
On July 28, 1997, the Trusts notified Robert Griffin and Robert Griffin, Jr., that they would
no longer be participants in the Tejas settlement.
          Robert Griffin and Robert Griffin, Jr., concede they did not pay the two sets of
invoices within thirty days of receiving them. Likewise, the Trusts concede they did not bill
them on a monthly basis, but waited over twenty months to invoice them at all, and that the
invoices then were for expenses aggregated for all those twenty months. The trial court
found that, in failing to bill Robert Griffin and Robert Griffin, Jr., monthly, the Trusts
committed a material breach of their letter agreement, and that such breach excused the
failure to pay the aggregated invoices within thirty days of receiving them. We believe the
trial court was correct in this finding, and that its action is supported by the evidence. Thus,
the judgment declaring that Robert Griffin and Robert Griffin, Jr., are entitled to participate
in the Tejas settlement is correct.
          The Trusts take the position that Robert Griffin and Robert Griffin, Jr., were not
excused from their obligation to pay within thirty days, because time was not of the
essence of the obligation to bill monthly, and further because they waived the Trusts'
breach and continued to consider the contract as not breached but still in effect. See
Hanks v. GAB Bus. Servs., Inc., 644 S.W.2d 707, 708 (Tex. 1982). We disagree. 
Litigation was already in progress between the Griffins and the Trusts when it became
clear to Robert Griffin and Robert Griffin, Jr., that the Trusts were going to bill them on an
aggregated basis and not on a monthly basis, and when that became apparent, they
amended their pleadings to complain of the Trusts' breach, and to seek damages for
breach of the agreement. It should be recognized also that the Trusts' primary breach was
not their delay in billing, but their billing on an accumulated basis for long due expenses
instead of billing the expenses on a monthly basis for current expenses. Such a breach
was damaging to Robert Griffin and Robert Griffin, Jr., because it required that they make
a much larger payment at one time than would have been required of them had the
relatively small monthly expenses been billed on a monthly basis as the Trusts had agreed. 
We find no evidence that Robert Griffin and Robert Griffin, Jr., waived the Trusts' breach.
          The Trusts also contend the trial court erred in awarding damages to Robert Griffin
and Robert Griffin, Jr., for their exclusion from the Tejas settlement because there is
factually and legally insufficient evidence to support the calculation of the damages. The
letter that outlined the agreement to allow the investors to participate in the settlement
provided that the investors who participated in any lump sum settlement would share in the
settlement proceeds on "a pro rata basis according to the proportion of the total damages
attributable to that [the particular investor's] contract." 
          The Trusts later decided that the original formula for allocating damages on a per
contract pro rata basis was too difficult to prove and apply, so they sent letters to the
investors proposing an "accord and satisfaction" on the basis that each investor who
participated in the Tejas litigation would receive his share of any settlement on a different
basis. That proposal provided:
First, all unpaid attorneys' fees and expenses arising from the litigation
will be paid from the settlement proceeds. This includes a contingent fee to
Susman Godfrey. Second, all participants will be reimbursed what they have
paid for in attorneys' fees and expenses. Third, the remaining settlement
funds will be distributed based on the same fractional interests as expenses
were allocated to and paid by all participants in the settlement. That is, you
will receive a distribution of the remaining settlement funds based on the
same fractional interest which you were charged fees and expenses of the
litigation.

          Because Robert Griffin and Robert Griffin, Jr., had been excluded from the group
of participants in the Tejas litigation before the accord and satisfaction letter was executed,
they were not parties to it. The trial court found that it was impossible to determine the
amount of damages that should be awarded to them pursuant to their original contract, so
the court decreed that the damages to all participants should be the formula outlined in the
accord and satisfaction proposal. Both Robert Griffin and Robert Griffin, Jr., and the Trusts
complain of this ruling by the trial court. Robert Griffin and Robert Griffin, Jr., contend the
court should, even if a remand is required, determine and award to them their damages
based on the formula in their original participation agreement for the Tejas settlement (but
which was later revoked by the Trusts for failure to timely and properly pay their share of
the litigation expenses). The Trusts contend the court should have denied any damages
to the two Griffins because they failed to adequately prove them.
          The trial court did not abuse its discretion in finding and awarding Robert Griffin's
and Robert Griffin, Jr.'s, damages. The Trusts cannot complain of the court's use of the
formula outlined in the Trusts' own accord and satisfaction letter. It was the formula the
Trusts agreed to use for all its participants, and it is fair that the Trusts honor that formula
for its other participants, whom the trial court and this Court have found were entitled to be
participants in the Tejas settlement, although the Trusts excluded them. At the very least,
the Trusts are estopped to deny that the formula they proposed for the other investors
should also apply to Robert Griffin and Robert Griffin, Jr.
          Robert Griffin and Robert Griffin, Jr., also are in no position to complain of the trial
court's use of the revised formula. They failed to conclusively prove with reasonable
certainty what their damages would have been under the original formula, so they have
not shown that the court abused its discretion in using the revised formula.
          The Trusts contend that, because Robert Griffin and Robert Griffin, Jr., failed to
prove their damages, the trial court should have rendered a take-nothing judgment against
them on the issue of damages. See Vista Chevrolet, Inc. v. Lewis, 709 S.W.2d 176 (Tex.
1986). This rule is inapplicable here. It applies when one claiming damages produces no
evidence on which the court can calculate reasonable damages. Here, both sides
presented conflicting but inconclusive evidence on the proper measure of damages. This
authorized the trial court to choose which evidence to accept. We find there is legally and
factually sufficient evidence to support the trial court's findings and award of damages.
          The Trusts next complain that the trial court's award of attorneys' fees is improper
because (1) there is no evidence that the Griffins made proper demand on their claim
under Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (Vernon 1997), and (2) the Griffins failed
to properly segregate the attorneys' fees applicable to the Tejas settlement participation
and the other claims.
          The trial court found that the Griffins made adequate presentment of their claims to
comply with the requirements of Tex. Civ. Prac. & Rem. Code Ann. § 38.002(2). There is
sufficient evidence to support the court's finding. No particular form of demand is required,
and the statute is to be liberally construed to promote its purpose. Jones v. Kelley, 614
S.W.2d 95 (Tex. 1981). Its purpose is to give an opportunity to the one against whom a
claim is asserted to satisfy the claim within thirty days after having notice of the claim
without incurring an obligation to pay attorneys' fees. Id.; Adams v. Petrade Int'l, Inc., 754
S.W.2d 696, 719 (Tex. App.—Houston [14th Dist.] 1988, writ denied).
          In this case, there is a long history of correspondence and negotiations between the
Griffins and the Trusts in which the Griffins made it clear that the Trusts owed them various
obligations under the letter agreements and other documents. These negotiations and
demands were made long before suit was filed to enforce them. This constitutes sufficient
presentment under the statute.
          Additionally, one of the Griffins' causes of action here was for declaratory judgment,
and the trial court rendered judgment declaring some of the rights and obligations of both
the Griffins and the Trusts. The court may award reasonable and necessary attorneys'
fees in declaratory judgment actions, and no presentment such as is required in Tex. Civ.
Prac. & Rem. Code Ann. § 38.002(2) is necessary. Tex. Civ. Prac. & Rem. Code Ann.
§ 37.009 (Vernon 1997).
          As concerns segregation of the fees among the various claims, the trial court
accepted the affidavit of the Griffins' attorney as to a proper segregation. There is no
controverting evidence. We find the court did not abuse its discretion in accepting this
evidence of a proper segregation.
          The Trusts also assert error on the part of the trial court in ordering them to continue
to market the Griffins' share of the production from the wells drilled and completed as
producers under the letter agreements. Both the Griffins and the Trusts concede that the
joint operating agreement under which the Trusts operated the wells gave the Trusts the
right to market the investors' share of the production, but also gave the Trusts the right to
discontinue or terminate that right at any time on giving thirty days' notice. The
assignments the Trusts voluntarily made and recorded for the Griffins in the year 2000
provided that the Trusts elected to terminate their right to market the Griffins' share of the
production. The trial court concluded that, although the Trusts had the right to terminate
the arrangement at any time, they had engaged in a course of action for over twenty years
when they did market the investors' shares of the production, and because of that course
of action, the Trusts were estopped to discontinue that practice. The trial court therefore
ordered the Trusts to continue to "market Plaintiffs' share of the gas on the same terms
and conditions as has been done for the other working interest owners." The court
specified no particular duration for this obligation.
          We find that the court erred in making this order. The Trusts had a contractual right
to terminate their right to market the investors' share of the production at any time. There
is no evidence that the Trusts are estopped from availing themselves of this contractual
right.
          Equitable estoppel requires a representation or course of dealing by one party that
causes another party to reasonably believe that the first party will not enforce a right that
he has, and reliance by the second party on that representation or course of action to his
detriment. Red Jacket Mfg. Co. v. Adams, 346 S.W.2d 897 (Tex. Civ. App.—El Paso
1961, writ ref'd n.r.e.); see also Liberty State Bank v. Guardian Sav. & Loan Ass'n, 127
Tex. 311, 94 S.W.2d 133 (1936). There is no evidence that the Trusts did anything to
induce the Griffins to believe the Trusts would not at some time avail themselves of their
right to terminate the purchasing arrangement. All the Trusts did was to market the
Griffins' share of the production, which they had a right to do as long as they chose. Their
action in doing so was consistent with the contract's provisions. The fact that the Trusts
did what the contract allowed them to do, even for twenty years, is no ground to estop them
from ceasing that practice, which the contract also gave them the absolute right to do. 
Furthermore, there was no detrimental reliance or change of position by the Griffins based
on the Trusts' course of action. We will reform the judgment to delete any requirement that
the Trusts continue to market the Griffins' share of the production.
THE GRIFFINS' CONTENTIONS
          The Griffins challenge the trial court's judgment in several respects. They first say
the court erred in ordering the Trusts to assign them their interests in the wells limited to
"the well bore and drilling unit" of the wells. The letter agreements by which the Griffins
participated in the wells provide that the Trusts will assign to the Griffins their proportionate
undivided working interest in the initial unit around the well and assignments of like
interests in the "units formed around additional wells in which you participate in drilling and
completing . . . ."
          The Griffins apparently contend the trial court should have ordered the Trusts to
assign their interests in the leases as to any drilling or pooled units around the producing
wells. We disagree with this contention. We construe the letter agreements to require an
assignment of the appropriate working interest in the drilling unit only, around each
producing well. This is how the trial court construed the agreements, but in its judgment
the court further limited the assigned interest to the well bore of the completed well. We
find this to be a restriction not authorized by the letter agreements. We will reform the
judgment to provide that the assigned interests will only be limited to the drilling unit around
the well.
          The Griffins next assert that the trial court erred in failing to find that the Trusts
breached their fiduciary duty. The court found that the Trusts acted as agent for the
Griffins in marketing their share of the production. An agency generally creates a fiduciary
relationship between the principal and the agent, but only with respect to the specific power
granted to the agent. Plummer v. Estate of Plummer, 51 S.W.3d 840 (Tex.
App.—Texarkana 2001, pet. denied); Restatement (Second) of Agency § 13 (1958). 
There is no evidence here that the Trusts breached any duty to the Griffins relating to their
marketing of the production. The trial court found there was no breach of any fiduciary
duty, and we conclude that the trial court did not abuse its discretion in making this finding. 
The finding is not against the conclusive evidence or against the great weight and
preponderance of the evidence, as it must be to authorize us to overturn the trial court's
failure to find.
          The Griffins also contend the trial court erred in finding they did not timely and
properly accept the Trusts' offer to allow them to participate in the additional wells known
as the Barksdale wells 5, 6, and 7, and the Beck well 6.
          In December 1997, the Trusts notified the Griffins of plans to drill the Barksdale and
Beck wells and offered to let them participate in those wells. In order to participate in the
wells, the Griffins had to agree to pay a total of $10,685.20. By letter, the Griffins' attorney,
Rex Nichols, notified the Trusts that the Griffins elected to participate in the four new wells,
and enclosed a check drawn on the attorney's trust account in the amount of $10,685.20. 
The Trusts notified Mr. Nichols through their own attorney that they would not accept
Mr. Nichols' check. Mr. Nichols tendered another check, but it was also refused.
          The Griffins argue that, because they timely tendered the proper amount of the
expenses, the Trusts were obligated to allow them to participate in the new wells. The
Trusts respond that the Griffins did not accept their offer, but made a counteroffer, so they
did not properly respond, and no binding contract was formed.
          The Trusts' offer contained a check list for the Griffins to fill out, sign, and return to
the Trusts if they elected to participate in the wells. The Griffins did not do that, but instead
they had their attorney write the Trusts a letter and enclose a check for the amount of the
costs. Evidence before the trial court showed that the Griffins' response was not an
unequivocal acceptance, but a counteroffer agreeing to participate in the wells if the Trusts
would accept their participation on a "non promoted" basis rather than on a "promoted"
basis as the original offer proposed. The trial court found this evidence to be the facts. 
Thus, it concluded that the Griffins' counteroffer was not an acceptance, and there was no
valid agreement to participate. We agree with the trial court's conclusion based on this
evidence. An acceptance must be identical to the offer, or there is no binding contract. 
Harris v. Balderas, 27 S.W.3d 71, 77 (Tex. App.—San Antonio 2000, pet. denied); Gilbert
v. Pettiette, 838 S.W.2d 890, 893 (Tex. App.—Houston [1st Dist.] 1992, no writ).
          Last, Robert Griffin and Robert Griffin, Jr., complain that the trial court erred in
allocating their damages with regard to the Tejas settlement on the basis of expenses paid
instead of on the basis of what production and expenses were attributable to the contracts
in which they participated. This issue is covered in our discussion of the allocation of
damages under the Trusts' issue, and we need not repeat that discussion here.
          For all of the foregoing reasons, we modify the judgment to (1) delete the provision
of the judgment ordering the Trusts to continue marketing the Griffins' share of the
production from the wells in which they participate, and (2) provide that the assignments
from the Trusts to the Griffins assign them their interests in the leasehold area comprising
the drilling unit around the producing wells, and (3) eliminate the provision that the interests
assigned be limited to the well bore of the applicable wells. As modified, the judgment is
affirmed.
 
                                                                           William J. Cornelius*
                                                                           Justice

*Chief Justice, Retired, Sitting by Assignment

Date Submitted:      May 12, 2004
Date Decided:         July 7, 2004


ON MOTIONS FOR REHEARING

          All parties have filed motions for rehearing. We will address only the matters we
believe need further discussion.
          The Griffins argue in their motion that, with regard to the Tejas settlement proceeds,
the trial court found the damages attributable to the Rusk County contract to be certain. 
Based on that assumption, the Griffins contend the trial court's finding that such damages
were indeterminable is erroneous. We disagree. The trial court did not find that the
damages attributable to the Rusk County contract were certain; rather, in its finding number
27P, the trial court found that, in the Tejas lawsuit, the Trusts' expert, Richard A. Johnston,
attributed 84.61 percent of the damages to the Rusk County contract. The trial court,
however, was not required to accept the expert's opinion if it did not believe it was accurate
or sufficiently definite or based on reliable evidence.
          The Trusts, in their motion for rehearing, argue that we erred in upholding the trial
court's ruling that the Trusts committed a material breach of the Tejas litigation participation
letter agreement by failing to bill Robert Griffin and Robert Griffin, Jr., on a monthly basis
for their shares of the litigation expenses. The Trusts contend the agreement to bill on a
monthly basis is an independent covenant in the agreement, and therefore its breach could
not be material. Whether a covenant in a contract is dependent or independent depends
on the intention of the parties as determined from a consideration of the entire contract. 
Lazy M Ranch, Ltd. v. TXI Operations, LP, 978 S.W.2d 678 (Tex. App.—Austin 1998, pet.
denied); Graco Robotics, Inc. v. Oaklawn Bank, 914 S.W.2d 633 (Tex. App.—Texarkana
1995, writ dism'd).
          Mutual covenants will be considered dependent rather than independent unless the
contrary intention clearly appears. Graco Robotics v. Oaklawn Bank, 914 S.W.2d 633. In
this case, the main purpose of the letter agreement was to provide for the sharing of
litigation expenses. The contemplated expenses were estimated to be very substantial and
to extend over a long period of time. Robert Griffin's and Robert Griffin, Jr.'s, primary
obligation under the agreement was to pay their shares of these expenses. Thus, the
spacing and the amounts of the payments were obviously major concerns with respect to
their obligations, as well as the Trusts' rights. The trial court found that the obligation to
bill these expenses on a monthly basis was a material covenant of the contract, and we
find the court's ruling supported by the evidence and the law.
          The principal case relied on by the Trusts on this issue, Emmord's Inc. v. Obermiller,
526 S.W.2d 562 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.), is inapposite. In
that case, the disputed covenant was not even expressed in the contract. It was alleged
to be an implied covenant, but the court found that it was not established. In our case, the
obligation to bill Robert Griffin and Robert Griffin, Jr., on a monthly basis is an express
provision of the contract, and the trial court found it was a material element of the contract.
 

          We respectfully overrule the motions for rehearing.
 
                                                                           William J. Cornelius
                                                                           Justice

Date:  August 18, 2004