## RAUCH v. HEARNE.
### No. 2646.

Court of Civil Appeals of Texas. Waco.
July 26, 1945.

Rehearing Denied Sept. 20, 1945.

Herman Eastland, Jr., and R. W. Calvert, both of Hillsboro, for appellant.

J. Rob Griffin, of Fort Worth, for appellee.

RICE, Chief Justice.

Will F. Hearne, appellee, claiming under his deceased mother, Stella W. Hearne, a creditor of the estate of W. H. Webb, deceased, brought this suit against appellant, Mrs. Leslye Rauch, in her capacity as administratrix de bonis non of the estate of W. H. Webb, deceased, to establish an indebtedness claimed by him against said estate.

Appellant defended on the ground that the debt sued on was barred by the four year statute of limitation.

Trial was had to the court resulting in a judgment in favor of appellee, and appellant has appealed. Other than the findings incorporated in the court's judgment and hereinafter referred to, no findings of fact or conclusions of law were filed by the trial court, and none were requested.

The sole question presented by this appeal is the alleged error of the trial court in failing to find that appellee's claim was barred by the four year statute of limitation.

W. H. Webb and wife, Catherine Webb, had nine children, among whom were Stella W. Hearne, M. W. Webb and W. W. Webb. Catherine Webb died intestate prior to the death of her husband, and no administration was had of her estate.

W. H. Webb departed this life in the year 1933. His will was duly probated and his sons, W. W. Webb and M. W. Webb, qualified as independent executors of his estate. M. W. Webb died in January, 1941; W. W. Webb died October 9, 1943; and from the date of the latter's death there was no one in charge of or administering the estate of W. H. Webb, deceased, until on or about April 5, 1944, an administrator de bonis non was appointed and qualified and subsequently resigned. Thereafter, in June, 1944, appellant qualified as administratrix de bonis non of the estate of W. H. Webb, deceased.

In December, 1936, Stella W. Hearne, as her part of the estate of her deceased mother and father, received (in addition to another note not here involved) a note for $2500, payable to her order on January 1, 1938, bearing interest from date at the rate of ten per cent, signed W. H. Webb Estate, M. W. Webb, Executor, W. W. Webb, Executor, "individual and independent executors of the estate of W. H. Webb, deceased." This note was secured by a deed of trust of even date therewith on lots one and two, block seventeen of the original town of Itasca, Texas, and was executed in all respects as the note above described. This deed of trust recited that the lien thereby created was second and inferior to a lien on the real estate therein described

securing a debt of the estate of W. H. Webb held by the American National Insurance Company.

The following stipulations, among others, were made during the course of the trial:

"That on or about September 4, 1938, there was executed and placed in the hands of Stella W. Hearne a deed of trust dated August 31, 1938, signed by M. W. Webb, and W. W. Webb, as executors of the estate of W. H. Webb, deceased, which deed of trust was never recorded, which deed of trust covered the identical and same property described in the preceding deed of trust, which was lots one and two, block seventeen, original town of Itasca, Texas, and was to secure a note for $2500.00 dated the same date of the deed of trust, payable to the order of Stella W. Hearne, due January 1, 1939, with interest at seven per cent per annum after maturity. That a note dated August 31, 1938, and being the note referred to in said deed of trust, accompanied said deed of trust.

"That on or about September 7, 1938, Stella W. Hearne executed a release of the original deed of trust lien given her on lots one and two, block seventeen, original town of Itasca, Hill County, Texas, and sent same to M. W. Webb, and which release was recorded October 9, 1940, in volume 302, page 122, deed records of Hill County, Texas.

"That the debt created by W. H. Webb and family and due to the American National Insurance Company, of Galveston, Texas, was not renewed or refunded.

"That Paul McCown, as administrator de bonis non of the estate of W. H. Webb, deceased, made application to the probate court for authority to sell lots one and two, block seventeen, original town of Itasca, Texas, which authority was granted, and subsequently Paul McCown did sell said property and out of the proceeds of such sale and the money belonging to the estate then in the bank, paid the debt of the American National Insurance Company", and other costs and expenses, and that appellant in her capacity as administratrix of said estate "has on hand the balance of the proceeds of said sale, less expenses, and which balance is less than $2201.11, and that there are no other claims that have been approved or allowed by the Administrator and filed with the County Clerk against the estate of W. H. Webb, deceased.

"That on or about June 3, 1944, Will F. Hearne, the son of Stella Hearne, made and presented to the administrator, Paul McCown, his claim for the balance in the hands of the administrator, same being the proceeds of the sale of said building after the debt due the American National Insurance Company and the taxes had been paid. That the administrator disallowed the claim the same day it was presented to him. That suit was filed August 30, 1944, on said claim in this District Court No. 18270, which was in the ninety days allowed by law.

"That Stella W. Hearne died January 11, 1943, in Oklahoma City, Oklahoma, intestate, and there was no administration on her estate nor any necessity for administration on her estate. That Stella W. Hearne was survived by two children, namely: J. W. Hearne and Will F. Hearne, Jr. That Stella W. Hearne did not adopt any child or children. That J. W. Hearne transferred and assigned to his brother, Will F. Hearne, any interest that he had or might have in the estate of his mother, Stella W. Hearne."

After her death there was found among the papers of Stella W. Hearne the following letter:

"9-4-38

"Stell:

"Here is the release and new deed of trust and you get this release right back to me as the Loan Co is getting impatient as we have been nearly three months fooling with this matter, and Tyne wont do a thing about his judgments—that is the two bank judgments, and we are selling the timber land to get money to take up those two judgments, but I think I can get them both settled for $100.00 and that will leave us about $200.00 after all expenses are paid—abstract, tax Etc.

The renewal of this loan is going to cost nearly $100.00 for attys fees and supplemental abstract. The abstract cost $50.00 and attys fees $30.00. I made Pat Hooks trustee for you and you can send these papers to him or to me just as you like.

"But just as soon as the new loan is affected I will record your deed of trust and mail it right back to you. You seem to have the idea that I want to beat you or take some undue advantage of you, but in this matter I will personally see to it that your deed of trust is protected and you wont be hurt.

"I had to pay $36.00 yesterday on the insurance and that is just on one policy. We have two policies amounting to $8000.00 and has to be kept paid up, but the building is in better shape now to take care of the loan than it had been at any time since Daddy died. We now have the old bank room rented and are now getting $85.00 per month rent. For a good long while we only got $15.00 per month then we got $55.00 for awhile, but the loan payments were $62.50 per month and the insurance and taxes per year was $340.00, so you see that even all the rent applied on the matter would not pay the installments and insurance and taxes.

"Now dont you delay this matter this is the only way out and this will give us a little further time to work on the sale of this building. I have to go to Hillsboro now to see the banking commissioner about Tynes judgment and making arrangement for the Abstract. You lay off of these lawyers as they cant get anymore for you than you can get for yourself, and if and when the building sells you will get all it brings except the loan, and from here on out if the building makes it the loan company will get it and you will get the receipt showing amount paid. I am still unable to work and am just as broke as I can be, and really dont know what I am going to do. I havent worked any now for over four months and I am not able to go to Marlin for more treatment—am just a little better than when I came home but not much. Hurry these papers back to me.

"As ever,

"M. W. W."

A letter from Mrs. Hearne, dated September 27, 1938, to Mr. Pat E. Hooks, Itasca, Texas, was introduced in evidence and reads as follows:

"Dear Sir:

"Please find enclosed deed of trust sent to me by Mark, as you perhaps know about it, as I believe Mark told me in his letter you agreed to act in this matter as trustee. I feel assured my interest will be looked after by you, and will appreciate anything you do about it in my behalf.

"Will you please send to me here my balance in your bank, thanking you in advance for all favors shown me in the past and the future.

"Very respectfully,

"Stella W. Hearne
"3509 N. W. 16th St.
"Oklahoma City, Okla.

"Mark will pay for record this deed of trust."

On October 1, 1938, Mr. Hooks acknowledged receipt of the above mentioned deed of trust, stating therein: "Have notified Mark that we have it, and he said he would call for it."

The following letter was introduced in evidence:

"September 16th 1941

"Dear Brother:

"I received your letter of September 7th 1941, relative to the Webb Estate Bank building located in Itasca, Texas.

"First, I wish to have you thoroughly understand why I signed the instrument that Mark filed in Hillsboro, Texas, some time ago. He (Mark) fixed up the release himself and mailed it to my address and told me to go to a Notary Public and have it signed and returned to him at once. He said he was having to renew the loan on the building and that the loan company would not renew the loan unless I signed this release. He also told me in the letter that just as soon as he got the loan renewed he would refile a new deed of trust and fix up the papers again for me in order to protect my interest, stating in nearly every letter to me that he would be sure to protect my interest in the Bank building, so for these promises to me I felt sure he would protect my rights, so I did sign the instrument and send it to him. In a short while after this happened Mark died and I was still under the impression that he had refiled the renewed deed of trust, but to my surprise when I went to Texas to see about it the deed was not on file. This action about the matter was really a shock to me, so Bill and I wrote and asked you to refile the papers for me, and we never did hear from you relative to the matter.

"Come now, you say the loan company won't renew the loan unless the building be acquired by one of the heirs or an individual. You understand I am the only interested heir in the Bank building. This is according to a contract signed by you and Mark to satisfy Mrs. Niece and I several years ago, and this second lien on the building for $2500.00 was to be my part of the Webb Estate. Now you know I have never gotten one dollar out of it yet, but I feel like you will be fair to me in this matter.

"In answer to your proposition in the last paragraph of your letter, will say for my interest in the Bank building I will take

$1500.00, $1000.00 of which is to be paid to me in cash immediately, and I will take two vendor lien notes on the Bank building at $250.00 each, these two notes to be paid within one year, and drawing ten per cent interest from date, or I will take $1250.00 all cash.

"Let me hear from you soon.

"With love, your sister,
"Stella W. Hearne,
"2121 North Jordon
"Oklahoma City, Okla."

In January, 1941, shortly after the death of M. W. Webb, Mrs. Stella W. Hearne and appellee, her son, visited Mrs. M. W. Webb (Mrs. Rauch at the time of the trial) and searched M. W. Webb's papers in an effort to find the above referred to deed of trust and note executed in 1938, but failed to find them. They subsequently on said occasion ascertained that the release executed by Mrs. Hearne in 1938 had been recorded but that the second deed of trust had not. On receiving this information Mrs. Hearne remarked, "Mark has just misplaced the deed of trust and forgotten to record it."

Appellee testified that after the death of his uncle, M. W. Webb, he wrote his Uncle Tyne (W. W. Webb) several letters about his mother's interest and received from him only one letter in reply, wherein his Uncle Tyne stated that Mark (M. W. Webb) had been taking care of the property while he (Tyne) was working somewhere else and that he did not know the status (of the matter) but would investigate and let appellee know; that he did not know anything about the matter, that Mark had been taking care of it. Mrs. Hearne died in January, 1943, having been bedridden for five or six months before her death. Her death occurred four years and eleven days after the date of the maturity (January 1, 1939) of the second note delivered to Mrs. Hearne. This suit was filed August 30, 1944. Tyne (W. W.) Webb died in October, 1943.

Appellee further testified that when his mother received from his uncle M. W. Webb the letter of September 4, 1938, above set forth, inclosing the release, the new note and new deed of trust, she stated to him that she did not want to accept it because the interest due her was not included, and said that she thought she would send the note and deed of trust back to her brother and that she would "just stand on his let-ter." In the year 1944 appellee searched through his mother's papers and correspondence, and on that occasion found the letter of September 4th, set out above, and the 1938 note in an envelope. It was then that he first discovered that his mother had retained the 1938 note in her possession. Thereafter, in May, 1944, appellee and his brother came to Itasca and found the deed of trust dated in September, 1938, in the possession of Mr. Pat E. Hooks, and the latter delivered said instrument, unrecorded, to appellee on that occasion.

Appellee's pleadings set forth fully all of the material facts and transactions hereinabove detailed. He attached to and made a part of his pleading a copy of the letter of September 4, 1938, from M. W. Webb to Stella Hearne, and alleged that she relied and acted on the representations therein contained by executing and sending to her brother the release of her security, and by sending the second deed of trust to Pat E. Hooks to hold until the release forwarded by her to her brother was used and the original debt renewed, when her brother was to obtain the deed of trust from Hooks and have the same recorded; that she did not accept the second note and second deed of trust in lieu of her prior debt and security, but that she relied upon the promises and agreements contained and set forth in the letter from her brother, and the need therein expressed for her to execute and return the release of her lien to enable the executor to renew or refinance said original debt on said property and thereby save it from foreclosure, but that said original debt was not refinanced or renewed and there was no necessity to record said release, but her brother caused the same to be recorded without recording her deed of trust which she had forwarded to Pat Hooks, which acts of omission and commission deprived Mrs. Hearne of any and all security for her debt unless the promise set out in the letter to her from her brother that she would receive all the proceeds from the sale of said property after the debt to the insurance company had been paid was enforceable; and that she relied on this promise and agreement in executing her lien. Appellee further pleaded that the release was executed by Mrs. Hearne without any consideration having been paid to her, but was executed and delivered by her on the promise contained in the letter from her brother, and particularly that promise therein contained that "if and

when the building sells you will get all it brings except the loan." Appellee further alleged that the real property securing the debt due his mother had been sold by the administrator of her father's estate, and that he sued for the balance remaining in the administrator's hands after the payment of the first loan, taxes and expenses of sale.

The trial court's judgment contains this conclusion and finding:

"The court is of the opinion, and so finds: That plaintiff's claim and debt is predicated and based on a letter contract, executed September 4th, 1938, for a debt of $2500.00, evidenced by a note executed by the Independent Executors of the Estate of W. H. Webb, deceased, as such and individually, dated December 18th, 1936, * * * which debt was secured by a Deed of Trust lien, second to the lien of the American National Insurance Company of Galveston, Texas, on Lots 1 and 2, Block 17, Original Town of Itasca, Hill County, Texas, and which property was sold by the Administrator, Paul McCown, and from the proceeds the taxes and debt due American National Insurance Company thereon were paid, and the present Administratrix, Mrs. Leslye Rauch, has in her hands a balance of $2,201.11. That plaintiff's debt has not been paid and exceeds the amount in the hands of said Administratrix, and that plaintiff is entitled to have his lien impressed on the fund in the hands of said Administratrix, and for judgment establishing his said claim against said Administratrix of the Estate of W. H. Webb, deceased."

Appellant contends that the evidence adduced on the trial of this cause conclusively established that appellee's cause of action was barred by the four year statute of limitation, and that the trial court erred in not entering judgment for appellant. We overrule this assignment.

In our opinion, the record before us, when viewed most favorably from the standpoint of appellee and in support of the trial court's judgment, does not establish, as a matter of law, that Mrs. Stella Hearne accepted the note and deed of trust enclosed in the letter to her from her brother, M. W. Webb, dated September 4, 1938, in lieu, and in satisfaction, of the indebtedness then owing to her by the Webb estate.

■ Excluding from our consideration as incompetent, because hearsay, the evidence of appellee that his mother stated to him that she thought she would not accept the second note and deed of trust but would just stand on the letter of September 4, 1938, we are of the opinion that there was sufficient admissible and competent evidence to support the trial court's express and implied findings that Mrs. Hearne executed and delivered to her brother an unconditional release of her security in reliance upon the representations and promises set forth in his letter to her under date of September 4, 1938, wherein, among other promises, he said: "You lay off these lawyers as they cant get any more for you than you can get for yourself, and if and when the building sells you will get all it brings except the loan * * *." The evidence further warrants the conclusion that the new note, deed of trust and release were each executed and delivered for the sole purpose of refinancing the then existing debt due the Insurance Company and secured by a first lien on the lot which constituted Mrs. Hearne's security, and thereby avert a foreclosure; and that said instruments were to become effective and legally binding on the parties only in the event the loan was refinanced. The loan was never refinanced, and the property was sold by the administrator in 1944.

■ In our opinion, appellee pleaded, and introduced evidence tending to establish, all of the essential elements of equitable estoppel. Mrs. Hearne, by executing and delivering the release of her security and by refraining from bringing suit to recover her debt and foreclose her lien, fully performed the requests made upon her by her brother while acting as executor of her father's estate and set forth in the above mentioned letter of September 4, 1938. The facts above detailed would support a finding that the acts, representations and promises of her brothers, while acting in their representative capacities, lulled Mrs. Hearne into a feeling of security, thereby causing her to fail to take action to protect her legal rights. Under all the facts and circumstances in evidence, appellant is in no position to urge the bar of the statute of limitation, but is estopped to take advantage thereof by reason of the promises and representations made by the executor of the estate of W. H. Webb and set forth in said letter of September 4, 1938. 28 T.J. p. 246, par. 149; Manzell v. Hightower, Tex. Civ.App., 159 S.W.2d 552; Randon v. Toby, 52 U.S. 491, 11 How. 493, 13 L.Ed. 784.

For the reasons above set forth, the judgment of the trial court is affirmed.