**The LONG TRUSTS, Appellant,**

v.

**Robert M. GRIFFIN, Robert M. Griffin, Jr., Marvin and Marie Ogilvie, and Charles W. Conrad, Appellees.**

No. 06–02–00185–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 12, 2004.

Decided July 7, 2004.

Opinion Overruling Rehearing Aug. 18, 2004.

---

Ron Adkison, Wellborn, Houston, Hederson, F. Franklin Honea, Law Offices of F. Franklin Honea, Dallas, Mike A. Hatchell, Locke Liddell & Sapp, LLP, Austin, Kenneth L. Ross, Ross, Hudgens & Graves, Longview, for appellant.

Andrew G. Khoury, Andrew G. Khoury, PC, Rex A. Nichols, Sr., Nichols & Nichols, PC, Longview, for appellee.

Before MORRISS, C.J., CARTER, and CORNELIUS,[1]JJ.

## OPINION

Opinion by Justice CORNELIUS (Retired).

The Long Trusts appeal from a judgment rendered by the trial court after a bench trial in a suit brought by Robert M. Griffin, Robert M. Griffin, Jr., Charles W. Conrad, and Marvin and Marie Ogilvie for specific performance, breach of contract, and declaratory judgment. For convenience, the Long Trusts will be referred to in this opinion as "the Trusts," and Robert Griffin, Robert Griffin, Jr., Charles Conrad, and the Ogilvies will be referred to collectively as "the Griffins."

Beginning in 1978, the Griffins and some of their predecessors in interest entered into various letter agreements with the Trusts whereby they participated with the Trusts in drilling certain gas wells on leases situated in several counties in East Texas. The letter agreements provided that the investors would pay certain proportions of the costs of drilling, completing, and operating the wells, and if the wells were producers, the Trusts would assign or credit to the investors a specified undivided interest in the working interest the Trusts had in the wells. Most of the wells were producers, and for many years, the Trusts operated the wells under the terms of their standard joint operating agreement that was referred to in the letter agreements. Eventually, various disputes arose between the Griffins and the Trusts as to whether and when the investors would receive assignments of their interests, the billing practices between the parties, the provisions of the assignments, and whether and on what terms the Griffins would share in an $11,000,000.00 settlement of a "take or pay" lawsuit the Trusts had filed against Tejas Gas Company, which was purchasing the gas produced from the wells in question.

Ultimately, the Griffins filed suit against the Trusts. After a bench trial, the trial court rendered judgment declaring that the letter agreements were valid; the Griffins were entitled to assignments of their interests; ordering the Trusts to assign the Griffins their interests; and ordering that the assignments conform to the terms of the letter agreements. The trial court ordered specific performance of the letter agreements, confirmed the Griffins' share of the Tejas settlement, and adjudicated several other disputes between the parties that will be addressed later in this opinion.

The Trusts have appealed, and the Griffins have filed a cross-appeal complaining

1. William J. Cornelius, C.J., Retired, Sitting    by Assignment

of certain portions of the trial court's judgment.

The Trusts raise numerous issues, which we group and summarize as follows: (1) the Griffins' suit was in reality or should have been one for trespass to try title, and they failed to sustain such an action; (2) the Griffins' actions are all barred by limitations; (3) the trial court erred in declaring the letter agreements valid because their enforcement is barred by the statute of frauds; (4) the trial court erred in reforming the assignments because there are no pleadings to support reformation and no evidence of any mistake or fraud; (5) judgment for specific performance is improper because the Trusts elected to credit the Griffins with their interests rather than assign them; (6) the trial court erred in awarding the Griffins part of the Tejas settlement because the Griffins failed to timely and properly pay their share of the litigation expenses; (7) there is legally and factually insufficient evidence to support the trial court's award of damages; (8) it was error to award attorneys' fees to the Griffins because there is no evidence they made a sufficient demand for payment and there is insufficient evidence of a proper allocation of such fees among the various claims; and (9) the trial court erred in requiring the Trusts to continue to market the Griffins' share of the production because there is no duty for the Trust to do so.

The Griffins' contentions are: (1) the trial court erred in limiting the assignments of the Griffins' interests to the "well bore" of the wells involved; (2) the trial court erred in failing to find that the Trusts breached their fiduciary duty; (3) it was error to allocate the Griffins' share of the Tejas settlement on the basis of the expenses paid instead of on the basis of the production and expenses attributable to the contracts; and (4) the trial court erred in failing to find that the Griffins properly and timely elected to participate in the Barksdale wells 5, 6, and 7 and the Beck well 6.

## THE TRUSTS' ISSUES

■ The trial court properly found the letter agreements valid and awarded judgment for specific performance. The evidence and the trial court's findings of fact show that the Griffins performed their obligations under the letter agreements. The Trusts performed some of their obligations, but did not properly assign the working interests to the Griffins. Thus, a decree of specific performance was authorized. Although the trial court's judgment in some instances attributes its decretal portions to the wrong legal theories, we must uphold the judgment on any legal theory supported by the evidence, even if the trial court gave an incorrect reason for its judgment. *Guar. County Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647 (Tex.1986); *Russ v. Titus Hosp. Dist.*, 128 S.W.3d 332 (Tex.App.-Texarkana 2004, pet. filed).

■ The Trusts contend that the Griffins should have sued in trespass to try title, and their failure to do so is fatal to their case. We disagree. The letter agreements the Griffins sought to enforce were written agreements to assign interests in oil and gas leases. Interests in oil and gas in Texas are real property. So, in effect, the letter agreements were contracts for the sale of interests in real property. Such contracts may be enforced by specific performance, and it is not necessary to sue in trespass to try title to recover the property. *Kluck v. Leuschner*, 70 S.W.2d 768, 769 (Tex.Civ.App.-Waco 1934, writ ref'd); *Blair v. Bird*, 20 S.W.2d 843 (Tex.Civ.App.-Waco 1929, no writ); *Ballard v. Ellerd*, 199 S.W. 305 (Tex.Civ. App.-San Antonio 1917, writ ref'd).

██ Specific performance will be granted where it appears, in view of all the circumstances, that it will serve the ends of justice. 67 TEX. JUR.3D *Specific Performance* § 1 (2003). Reformation and specific performance may be obtained in the same action, i.e., the contract may be reformed or corrected, and specifically enforced as reformed. *Tyrrell–Combest Realty Co. v. Mullen*, 268 S.W. 1011 (Tex.Civ. App.-Beaumont 1925, no writ). Specific performance is available only when the plaintiff's remedy at law is inadequate, but it is available to enforce a contract to convey real estate because an action for damages is inadequate in such a case. *Milliken v. Townsend*, 16 S.W.2d 259 (Tex. Com.App.1929).

██ The Trusts also contend the letter agreements are invalid because they do not comply with the statute of frauds. TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 2002). They argue that the letter agreements do not adequately describe the interests to which they pertain. To avoid violating the statute of frauds, an agreement for the sale of land must furnish within itself, or by reference to other existing writings, records, or data, information by which the land to be conveyed may be identified with reasonable certainty. *MTrust Corp. v. LJH Corp.*, 837 S.W.2d 250 (Tex.App.-Fort Worth 1992, writ denied). The trial court found that the letter agreements here satisfied that requirement, and the court's finding is supported by sufficient evidence. Aside from that finding, however, there is another basis, also supported by sufficient evidence and the trial court's findings, on which the letter agreements may be held valid despite the statute of frauds.

██ A defense of the statute of frauds is unavailable when the party seeking to rely on the defense recognizes the challenged agreements, acts under their provisions, accepts benefits under them, and even performs under them over a long period of time without complaint or action claiming they are invalid. *626 Joint Venture v. Spinks*, 873 S.W.2d 73 (Tex.App.-Austin 1993, no writ); *Estate of Kaiser v. Gifford*, 692 S.W.2d 525 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Le Sage v. Dunaway*, 195 S.W.2d 729 (Tex.Civ.App.-Waco 1946, no writ); *Callahan v. Walsh*, 49 S.W.2d 945 (Tex.Civ.App.-San Antonio 1932, writ ref'd).

██ In this case, both the Trusts and the Griffins acted in full recognition and acceptance of the validity of the letter agreements for more than twenty years, accepting the benefits and obligations of those agreements and performing their respective obligations. Indeed, the Trusts even made assignments of the interests covered by the agreements and had them recorded in the year 2000. Because the Griffins challenged the assignments as not being in full compliance with the letter agreements, this suit resulted and later was expanded to include additional controversies concerning the parties' compliance with the agreements and other matters. Because both parties recognized their obligations under the letter agreements and acted under their provisions until the development of the legal action, the Trusts, and indeed the Griffins as well, are estopped to assert any invalidity of the letter agreements by reason of the statute of frauds.

██ The same theory applies to the Trusts' contention that all of the Griffins' causes of action are barred by limitations. By recognizing the validity of the letter agreements for over twenty years, acting under their terms, accepting the benefits under them, and disputing with the Griffins only as to what kind of performance would comply with the agreements until

about the very time suit was filed, the Trusts are estopped to claim that limitations have barred the actions. *State v. Tex. Elec. Serv. Co.*, 488 S.W.2d 878 (Tex. Civ.App.-Fort Worth 1972, no writ); *Lanpar Co. v. Stanfield*, 474 S.W.2d 753 (Tex. Civ.App.-Waco 1971, writ ref'd n.r.e.); *Moutos v. San Saba County Peanut Growers Ass'n*, 268 S.W.2d 761 (Tex.Civ.App.-Austin 1954, no writ); *see also Irwin v. Prestressed Structures, Inc.*, 442 S.W.2d 406 (Tex.Civ.App.-Amarillo 1969, writ ref'd n.r.e.) (holding, after trial, that estoppel was not proved); *Rauch v. Hearne*, 189 S.W.2d 342 (Tex.Civ.App.-Waco 1945, writ ref'd w.o.m.). Additionally, the trial court found that the Griffins instituted suit for specific performance within four years from the time the Trusts breached the letter agreements by failing to properly assign the interests. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(1) (Vernon 2002). Thus, limitations would not bar the action in any event.

█ The Trusts contend the trial court erred in "reforming" the assignments of the working interests to comply with the provisions of the letter agreements. The Trusts made and recorded assignments, but the Griffins contended the assignments were not in compliance with the terms of the letter agreements. The trial court ordered the assignments "reformed" to comply with the letter agreements.

The Trusts argue that reformation of the assignments was not proper because there are no pleadings to support it, there is no evidence there was a mistake in the kind of assignments required, and there is insufficient evidence to support reformation. Putting this case in its proper context, we note that the trial court did not apply the traditional equitable doctrine of reformation to correct a mistake. Although the court did find there was a mutual mistake in making the assign-

ments, what it actually did was to specifically enforce the letter agreements' requirements for assignments, and order that the assignments be "reformed" to *conform* to those requirements. The trial court's actions in this regard were proper, and the judgment for specific performance is not impugned or invalidated simply because the trial court referred to the action as reforming the assignments.

Moreover, as we have already noted, reformation and specific performance may be obtained in the same action. The agreement may be reformed and corrected, as well as specifically enforced, in the same suit. *Tyrrell–Combest Realty Co.*, 268 S.W. 1011; *see also Ballard*, 199 S.W. 305.

█ The Trusts assert that, because some of the letter agreements provide that when an investor in a well complies with the provisions of the letter agreement the Trusts will "assign or credit" the interest to the investor, the Trusts have no obligation to assign the interest, but may instead elect to simply credit the investor with such interest. We reject this argument. The letter agreements provide that the participants "shall own and they [the Trusts] will assign or credit" to them their undivided interests in the working interest if and when the well is completed as a producer. Considering the fact that the letter agreements speak in terms of the participants owning their interests, and considering the four corners of the letter agreements, we construe them as giving the *participants* the right to elect whether to take an assignment or to allow the Trusts to simply credit them with their interests. A simple credit of their interests would not give the participants the means to have their "ownership" reflected in the deed records. The trial court came to the same conclusion, since it found that the participants were entitled to assign-

ments of their interests upon completion of each well.

The Trusts also contend the trial court erred in awarding Robert Griffin and Robert Griffin, Jr., a proportionate part of the proceeds from the Tejas settlement, because they did not properly and timely pay their share of the litigation expenses as required by the participation agreement.

The Trusts and the Griffins executed letter agreements in May of 1992, providing that if the Griffins paid their pro rata share of the legal expenses in the Tejas litigation, they would be entitled to share in the proceeds received as a result of that litigation. The agreements provided that the Trusts would bill the investors monthly for their shares of the legal expenses, and that the investors would be required to pay the Trusts their share of those expenses within thirty days from receiving an invoice for them. The agreements also provided that if the investors failed more than once to pay the invoices within thirty days of receiving them, they would forfeit their right to share in the litigation proceeds.

On April 1, 1997, the Trusts made their first billing to Robert Griffin and Robert Griffin, Jr., for their share of the litigation expenses for the preceding twenty months. Robert Griffin was billed for $3,320.51 and Robert Griffin, Jr., was billed for $4,980.74. They did not pay these invoices, but instead had their attorney write to the Trusts on April 14, 1997. They complained about the Trusts' action in waiting so long and accumulating such large sums before billing for them, and they offered to discharge these amounts by paying $100.00 per month for forty-one months. The Trusts did not accept this offer. On April 30, 1997, Robert Griffin and Robert Griffin, Jr., received other billings from the Trusts for $177.31 and $265.97, respectively. They failed to pay these amounts.

The Trusts included with their invoices a letter insisting that they make prompt payment of the invoices while the Trusts addressed their "concerns" about the late, aggregated billings. On July 28, 1997, the Trusts notified Robert Griffin and Robert Griffin, Jr., that they would no longer be participants in the Tejas settlement.

██ Robert Griffin and Robert Griffin, Jr., concede they did not pay the two sets of invoices within thirty days of receiving them. Likewise, the Trusts concede they did not bill them on a monthly basis, but waited over twenty months to invoice them at all, and that the invoices then were for expenses aggregated for all those twenty months. The trial court found that, in failing to bill Robert Griffin and Robert Griffin, Jr., monthly, the Trusts committed a material breach of their letter agreement, and that such breach excused the failure to pay the aggregated invoices within thirty days of receiving them. We believe the trial court was correct in this finding, and that its action is supported by the evidence. Thus, the judgment declaring that Robert Griffin and Robert Griffin, Jr., are entitled to participate in the Tejas settlement is correct.

The Trusts take the position that Robert Griffin and Robert Griffin, Jr., were not excused from their obligation to pay within thirty days, because time was not of the essence of the obligation to bill monthly, and further because they waived the Trusts' breach and continued to consider the contract as not breached but still in effect. *See Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex.1982). We disagree. Litigation was already in progress between the Griffins and the Trusts when it became clear to Robert Griffin and Robert Griffin, Jr., that the Trusts were going to bill them on an aggregated basis and not on a monthly basis, and when that became apparent, they amended their

pleadings to complain of the Trusts' breach, and to seek damages for breach of the agreement. It should be recognized also that the Trusts' primary breach was not their *delay* in billing, but their billing on an accumulated basis for long due expenses instead of billing the expenses on a monthly basis for current expenses. Such a breach was damaging to Robert Griffin and Robert Griffin, Jr., because it required that they make a much larger payment at one time than would have been required of them had the relatively small monthly expenses been billed on a monthly basis as the Trusts had agreed. We find no evidence that Robert Griffin and Robert Griffin, Jr., waived the Trusts' breach.

■ The Trusts also contend the trial court erred in awarding damages to Robert Griffin and Robert Griffin, Jr., for their exclusion from the Tejas settlement because there is factually and legally insufficient evidence to support the calculation of the damages. The letter that outlined the agreement to allow the investors to participate in the settlement provided that the investors who participated in any lump sum settlement would share in the settlement proceeds on "a pro rata basis according to the proportion of the total damages attributable to that [the particular investor's] contract."

The Trusts later decided that the original formula for allocating damages on a per contract pro rata basis was too difficult to prove and apply, so they sent letters to the investors proposing an "accord and satisfaction" on the basis that each investor who participated in the Tejas litigation would receive his share of any settlement on a different basis. That proposal provided:

> First, all unpaid attorneys' fees and expenses arising from the litigation will be paid from the settlement proceeds. This includes a contingent fee to Susman Godfrey. Second, all participants will be reimbursed what they have paid for in attorneys' fees and expenses. Third, the remaining settlement funds will be distributed based on the same fractional interests as expenses were allocated to and paid by all participants in the settlement. That is, you will receive a distribution of the remaining settlement funds based on the same fractional interest which you were charged fees and expenses of the litigation.

Because Robert Griffin and Robert Griffin, Jr., had been excluded from the group of participants in the Tejas litigation before the accord and satisfaction letter was executed, they were not parties to it. The trial court found that it was impossible to determine the amount of damages that should be awarded to them pursuant to their original contract, so the court decreed that the damages to all participants should be the formula outlined in the accord and satisfaction proposal. Both Robert Griffin and Robert Griffin, Jr., and the Trusts complain of this ruling by the trial court. Robert Griffin and Robert Griffin, Jr., contend the court should, even if a remand is required, determine and award to them their damages based on the formula in their original participation agreement for the Tejas settlement (but which was later revoked by the Trusts for failure to timely and properly pay their share of the litigation expenses). The Trusts contend the court should have denied any damages to the two *Griffins* because they failed to adequately prove them.

The trial court did not abuse its discretion in finding and awarding Robert Griffin's and Robert Griffin, Jr.'s, damages. The Trusts cannot complain of the court's use of the formula outlined in the Trusts' own accord and satisfaction letter. It was the formula the Trusts agreed to use for all its participants, and it is fair that the

Trusts honor that formula for its other participants, whom the trial court and this Court have found were entitled to be participants in the Tejas settlement, although the Trusts excluded them. At the very least, the Trusts are estopped to deny that the formula they proposed for the other investors should also apply to Robert Griffin and Robert Griffin, Jr.

Robert Griffin and Robert Griffin, Jr., also are in no position to complain of the trial court's use of the revised formula. They failed to conclusively prove with reasonable certainty what their damages would have been under the original formula, so they have not shown that the court abused its discretion in using the revised formula.

■ The Trusts contend that, because Robert Griffin and Robert Griffin, Jr., failed to prove their damages, the trial court should have rendered a take-nothing judgment against them on the issue of damages. *See Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176 (Tex.1986). This rule is inapplicable here. It applies when one claiming damages produces no evidence on which the court can calculate reasonable damages. Here, both sides presented conflicting but inconclusive evidence on the proper measure of damages. This authorized the trial court to choose which evidence to accept. We find there is legally and factually sufficient evidence to support the trial court's findings and award of damages.

The Trusts next complain that the trial court's award of attorneys' fees is improper because (1) there is no evidence that the Griffins made proper demand on their claim under TEX. CIV. PRAC. & REM.CODE ANN. § 38.002 (Vernon 1997), and (2) the Griffins failed to properly segregate the attorneys' fees applicable to the Tejas settlement participation and the other claims.

■ The trial court found that the Griffins made adequate presentment of their claims to comply with the requirements of TEX. CIV. PRAC. & REM.CODE ANN. § 38.002(2). There is sufficient evidence to support the court's finding. No particular form of demand is required, and the statute is to be liberally construed to promote its purpose. *Jones v. Kelley,* 614 S.W.2d 95 (Tex.1981). Its purpose is to give an opportunity to the one against whom a claim is asserted to satisfy the claim within thirty days after having notice of the claim without incurring an obligation to pay attorneys' fees. *Id.; Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 719 (Tex.App.-Houston [1st Dist.] 1988, writ denied).

In this case, there is a long history of correspondence and negotiations between the Griffins and the Trusts in which the Griffins made it clear that the Trusts owed them various obligations under the letter agreements and other documents. These negotiations and demands were made long before suit was filed to enforce them. This constitutes sufficient presentment under the statute.

Additionally, one of the Griffins' causes of action here was for declaratory judgment, and the trial court rendered judgment declaring some of the rights and obligations of both the Griffins and the Trusts. The court may award reasonable and necessary attorneys' fees in declaratory judgment actions, and no presentment such as is required in TEX. CIV. PRAC. & REM.CODE ANN. § 38.002(2) is necessary. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997).

■ As concerns segregation of the fees among the various claims, the trial court accepted the affidavit of the Griffins' attorney as to a proper segregation. There is no controverting evidence. We find the court did not abuse its discretion

in accepting this evidence of a proper segregation.

■ The Trusts also assert error on the part of the trial court in ordering them to continue to market the Griffins' share of the production from the wells drilled and completed as producers under the letter agreements. Both the Griffins and the Trusts concede that the joint operating agreement under which the Trusts operated the wells gave the Trusts the right to market the investors' share of the production, but also gave the Trusts the right to discontinue or terminate that right at any time on giving thirty days' notice. The assignments the Trusts voluntarily made and recorded for the Griffins in the year 2000 provided that the Trusts elected to terminate their right to market the Griffins' share of the production. The trial court concluded that, although the Trusts had the right to terminate the arrangement at any time, they had engaged in a course of action for over twenty years when they did market the investors' shares of the production, and because of that course of action, the Trusts were estopped to discontinue that practice. The trial court therefore ordered the Trusts to continue to "market Plaintiffs' share of the gas on the same terms and conditions as has been done for the other working interest owners." The court specified no particular duration for this obligation.

We find that the court erred in making this order. The Trusts had a contractual right to terminate their right to market the investors' share of the production at any time. There is no evidence that the Trusts are estopped from availing themselves of this contractual right.

■ Equitable estoppel requires a representation or course of dealing by one party that causes another party to reasonably believe that the first party will not enforce a right that he has, and reliance by the second party on that representation or course of action to his detriment. *Red Jacket Mfg. Co. v. Adams*, 346 S.W.2d 897 (Tex.Civ.App.-El Paso 1961, writ ref'd n.r.e.); *see also Liberty State Bank v. Guardian Sav. & Loan Ass'n*, 127 Tex. 311, 94 S.W.2d 133 (1936). There is no evidence that the Trusts did anything to induce the Griffins to believe the Trusts would not at some time avail themselves of their right to terminate the purchasing arrangement. All the Trusts did was to market the Griffins' share of the production, which they had a right to do as long as they chose. Their action in doing so was consistent with the contract's provisions. The fact that the Trusts did what the contract allowed them to do, even for twenty years, is no ground to estop them from ceasing that practice, which the contract also gave them the absolute right to do. Furthermore, there was no detrimental reliance or change of position by the Griffins based on the Trusts' course of action. We will reform the judgment to delete any requirement that the Trusts continue to market the Griffins' share of the production.

## THE GRIFFINS' CONTENTIONS

The Griffins challenge the trial court's judgment in several respects. They first say the court erred in ordering the Trusts to assign them their interests in the wells limited to "the well bore and drilling unit" of the wells. The letter agreements by which the Griffins participated in the wells provide that the Trusts will assign to the Griffins their proportionate undivided working interest in the initial unit around the well and assignments of like interests in the "units formed around additional wells in which you participate in drilling and completing...."

■ The Griffins apparently contend the trial court should have ordered the

Trusts to assign their interests in the leases as to any drilling *or pooled units* around the producing wells. We disagree with this contention. We construe the letter agreements to require an assignment of the appropriate working interest in the drilling unit only, around each producing well. This is how the trial court construed the agreements, but in its judgment the court further limited the assigned interest to the well bore of the completed well. We find this to be a restriction not authorized by the letter agreements. We will reform the judgment to provide that the assigned interests will only be limited to the drilling unit around the well.

█ The Griffins next assert that the trial court erred in failing to find that the Trusts breached their fiduciary duty. The court found that the Trusts acted as agent for the Griffins in marketing their share of the production. An agency generally creates a fiduciary relationship between the principal and the agent, but only with respect to the specific power granted to the agent. *Plummer v. Estate of Plummer*, 51 S.W.3d 840 (Tex.App.-Texarkana 2001, pet. denied); RESTATEMENT (SECOND) OF AGENCY § 13 (1958). There is no evidence here that the Trusts breached any duty to the Griffins relating to their marketing of the production. The trial court found there was no breach of any fiduciary duty, and we conclude that the trial court did not abuse its discretion in making this finding. The finding is not against the conclusive evidence or against the great weight and preponderance of the evidence, as it must be to authorize us to overturn the trial court's failure to find.

█ The Griffins also contend the trial court erred in finding they did not timely and properly accept the Trusts' offer to allow them to participate in the additional wells known as the Barksdale wells 5, 6, and 7, and the Beck well 6.

In December 1997, the Trusts notified the Griffins of plans to drill the Barksdale and Beck wells and offered to let them participate in those wells. In order to participate in the wells, the Griffins had to agree to pay a total of $10,685.20. By letter, the Griffins' attorney, Rex Nichols, notified the Trusts that the Griffins elected to participate in the four new wells, and enclosed a check drawn on the attorney's trust account in the amount of $10,685.20. The Trusts notified Mr. Nichols through their own attorney that they would not accept Mr. Nichols' check. Mr. Nichols tendered another check, but it was also refused.

The Griffins argue that, because they timely tendered the proper amount of the expenses, the Trusts were obligated to allow them to participate in the new wells. The Trusts respond that the Griffins did not accept their offer, but made a counteroffer, so they did not properly respond, and no binding contract was formed.

█ The Trusts' offer contained a check list for the Griffins to fill out, sign, and return to the Trusts if they elected to participate in the wells. The Griffins did not do that, but instead they had their attorney write the Trusts a letter and enclose a check for the amount of the costs. Evidence before the trial court showed that the Griffins' response was not an unequivocal acceptance, but a counteroffer agreeing to participate in the wells if the Trusts would accept their participation on a "non promoted" basis rather than on a "promoted" basis as the original offer proposed. The trial court found this evidence to be the facts. Thus, it concluded that the Griffins' counteroffer was not an acceptance, and there was no valid agreement to participate. We agree with the trial court's conclusion based on this evidence. An acceptance must be identical to the

offer, or there is no binding contract. *Harris v. Balderas*, 27 S.W.3d 71, 77 (Tex. App.-San Antonio 2000, pet. denied); *Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex. App.-Houston [1st Dist.] 1992, no writ).

Last, Robert Griffin and Robert Griffin, Jr., complain that the trial court erred in allocating their damages with regard to the Tejas settlement on the basis of expenses paid instead of on the basis of what production and expenses were attributable to the contracts in which they participated. This issue is covered in our discussion of the allocation of damages under the Trusts' issue, and we need not repeat that discussion here.

For all of the foregoing reasons, we modify the judgment to (1) delete the provision of the judgment ordering the Trusts to continue marketing the Griffins' share of the production from the wells in which they participate, and (2) provide that the assignments from the Trusts to the Griffins assign them their interests in the leasehold area comprising the drilling unit around the producing wells, and (3) eliminate the provision that the interests assigned be limited to the well bore of the applicable wells. As modified, the judgment is affirmed.

## ON MOTIONS FOR REHEARING

All parties have filed motions for rehearing. We will address only the matters we believe need further discussion.

The Griffins argue in their motion that, with regard to the Tejas settlement proceeds, the trial court found the damages attributable to the Rusk County contract to be certain. Based on that assumption, the Griffins contend the trial court's finding that such damages were indeterminable is erroneous. We disagree. The trial court did not find that the damages attributable to the Rusk County contract were certain; rather, in its finding number 27P,

the trial court found that, in the Tejas lawsuit, the Trusts' expert, Richard A. Johnston, *attributed* 84.61 percent of the damages to the Rusk County contract. The trial court, however, was not required to accept the expert's opinion if it did not believe it was accurate or sufficiently definite or based on reliable evidence.

■ The Trusts, in their motion for rehearing, argue that we erred in upholding the trial court's ruling that the Trusts committed a material breach of the Tejas litigation participation letter agreement by failing to bill Robert Griffin and Robert Griffin, Jr., on a monthly basis for their shares of the litigation expenses. The Trusts contend the agreement to bill on a monthly basis is an independent covenant in the agreement, and therefore its breach could not be material. Whether a covenant in a contract is dependent or independent depends on the intention of the parties as determined from a consideration of the entire contract. *Lazy M Ranch, Ltd. v. TXI Operations, LP*, 978 S.W.2d 678 (Tex.App.-Austin 1998, pet. denied); *Graco Robotics, Inc. v. Oaklawn Bank*, 914 S.W.2d 633 (Tex.App.-Texarkana 1995, writ dism'd).

■ Mutual covenants will be considered dependent rather than independent unless the contrary intention clearly appears. *Graco Robotics v. Oaklawn Bank*, 914 S.W.2d 633. In this case, the main purpose of the letter agreement was to provide for the sharing of litigation expenses. The contemplated expenses were estimated to be very substantial and to extend over a long period of time. Robert Griffin's and Robert Griffin, Jr.'s, primary obligation under the agreement was to pay their shares of these expenses. Thus, the spacing and the amounts of the payments were obviously major concerns with respect to their obligations, as well as the

Trusts' rights. The trial court found that the obligation to bill these expenses on a monthly basis was a material covenant of the contract, and we find the court's ruling supported by the evidence and the law.

The principal case relied on by the Trusts on this issue, *Emmord's Inc. v. Obermiller*, 526 S.W.2d 562 (Tex.Civ.App.-Corpus Christi 1975, writ ref'd n.r.e.), is inapposite. In that case, the disputed covenant was not even expressed in the contract. It was alleged to be an implied covenant, but the court found that it was not established. In our case, the obligation to bill Robert Griffin and Robert Griffin, Jr., on a monthly basis is an express provision of the contract, and the trial court found it was a material element of the contract.

We respectfully overrule the motions for rehearing.